[No. B226324. Second Dist., Div. Six. Oct. 19, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON RUIZ HERNANDEZ, Defendant and Appellant.

COUNSEL

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Senior Assistant Attorney General, Steven E. Mercer, Roberta L. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

YEGAN, J.—Ramon Ruiz Hernandez appeals his conviction, by jury, of rape of an unconscious person. (Pen. Code, § 261, subd. (a)(4).)[1] He was sentenced by the trial court to a term of three years in state prison. Appellant contends there was insufficient evidence that the victim was unconscious or that he was aware of this fact. He further contends the trial court erred when it failed to instruct the jury on simple battery (§ 242) as a lesser included offense. We affirm.

*Facts*

A.B. spent the night of July 4, 2009, at the Glendale apartment of her godmother, Alejandra Garcia. It was Alejandra's birthday and she was having a party with some family members and friends, including her cousin, appellant. By around midnight, most of the guests were gone, but A.B., Alejandra and appellant were still playing video games and drinking beer. During the evening, A.B. told Alejandra that she did not want to be left alone with appellant. Alejandra told A.B. and appellant that they should both stay the night because they had been drinking. A.B. changed into pajama bottoms and a T-shirt and went into the bedroom to sleep. Appellant stayed in the living room, on the couch. Alejandra got into bed with A.B.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

A.B. woke up about 4:00 a.m. and went to the bathroom. She noticed that her vagina was wet, she was not wearing her underwear and her pajama bottoms were on inside out. She felt scared and wanted to call someone but could not find her phone in the bedroom, where she had left it the night before. Appellant was sleeping on the living room couch. A.B. woke him up and asked if he had done anything to her. Appellant denied doing anything. Then he got down on his knees, used his fists to strike himself in the head and repeated in Spanish, "I didn't do anything, I swear." A.B. found her phone in the kitchen and called her brother, Ivan, to pick her up. She did not want to stay in the apartment, so she went outside and started walking. She met Ivan and he drove her home.

Once at home, A.B. called her best friend, appellant's sister Linda. She told Linda that she thought appellant raped her. Later that morning, A.B. went to the hospital with her mother, Ivan, and Linda where she was given a sexual assault examination. The forensic nurse examiner testified that A.B. had lacerations on the entrance of her vagina that were consistent with blunt penetrating trauma and were more severe than she would expect to see with consensual sex. DNA tests confirmed that saliva found on A.B.'s neck and sperm found on her external and internal genitalia were appellant's.

When questioned by police, appellant initially denied having sex with A.B. Then, appellant said that A.B. and Alejandra told him they were gay and wanted him to leave so they could "do their thing." He told them he would leave if they each kissed him. They did and then went into the bedroom. He stayed in the living room and eventually went to sleep. When he got up in the night to use the bathroom, he walked past A.B.'s bed.[2] The two started kissing and eventually had sex. Appellant first told the police that A.B. was awake and that she moved her hips and legs so that he could remove her pajama bottoms. After some additional questioning, he stated that A.B. was asleep when he first started kissing her and when he removed her pants, but that she lifted her legs behind his head once he started having sex with her. Appellant later said that A.B. was "knocked out" or "out cold" the entire time and that she did not give him permission to have sex with her.

At trial, appellant testified that the sex was consensual. He told the jury that he had been confused by the police officer's questions because he does not speak English very well. He testified that, before anyone went to bed, he was massaging A.B.'s feet and she seemed to like it. Alejandra told him, "No leave her alone. She's mine tonight." They asked him to leave because they said, " 'We are gay and we could not do our thing,' " with him there. Both women kissed him so that he would leave. He stayed anyway. The women

---

[2] Alejandra's apartment has one bedroom and one bathroom, which is reached through the bedroom.

went into the bedroom together. Later, he walked past A.B.'s bed as he left the bathroom. The two started kissing. She was awake and responsive. They had consensual sex.

Appellant's sister, Linda, testified that A.B. called her about 5:30 a.m. on July 5 to say she thought she had had sex with Linda's brother and that she had been very drunk. A.B. did not say she had been raped. They went to the hospital because A.B. wanted to get a "morning after" pill, to avoid pregnancy. Two days later, A.B. called Linda and told her that she remembered having consensual sex with appellant. She wanted to tell the police but was afraid she would get in trouble. Linda did not tell the police or appellant's trial counsel about this conversation before she testified.

## Discussion

Appellant contends there was no substantial evidence A.B. was unconscious or that he knew she was unconscious while they were having sex. He further contends the trial court erred in failing to give an instruction on battery as a lesser included offense of the charged crime, rape of an unconscious person. Neither contention has merit.

## Substantial Evidence

In determining whether appellant's conviction is supported by substantial evidence, we apply a familiar standard. We review the entire record in the light most favorable to the judgment, to determine whether it contains evidence sufficient to permit any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 99 S.Ct. 2781]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, but we do not reweigh the evidence or reevaluate the credibility of the witnesses. (*People v. Ochoa, supra*, 6 Cal.4th at p. 1206.)

Rape, as defined by section 261, subdivision (a)(4), includes an act of sexual intercourse accomplished, "Where a person is at the time unconscious of the nature of the act, and this is known to the accused. As used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting because the victim meets one of the following conditions: [¶] (A) Was unconscious or asleep." (§ 261, subd. (a)(4)(A).) The trial court instructed the jury that it could find appellant guilty only if the prosecution proved beyond a reasonable doubt that, when A.B. had sexual intercourse with appellant, she was unable to resist because she was unconscious of the nature of the act and

that appellant knew A.B. was unable to resist because she was unconscious of the nature of the act. (CALCRIM No. 1003.)

■ Appellant concedes there is ample evidence that A.B. was very drunk when she went to bed that night, and that she could not remember the next morning what had happened. He contends that her memory lapse establishes drunkenness, not unconsciousness. This contention essentially invites us to reweigh the evidence and infer that A.B. was drunk rather than unconscious when he had sex with her. We decline the invitation because the record contains substantial evidence supporting the inferences drawn by the jury: that A.B. was unconscious and that appellant knew it. In his tape-recorded interview with Glendale Police Department Detective Ernest Gaxiola, appellant admitted that A.B. was unconscious when he had sex with her. According to appellant, A.B. never told him she wanted to have sex; in fact, she said nothing during the entire encounter. She did not "wake up" and barely even moved while they were having sex. In fact, appellant agreed that she was "knocked out," or "out cold" while they were having sex. Appellant also admitted that A.B. never gave him permission to have sex with her and that he knew she "didn't want to have sex with [him]." A rational trier of fact could find from these statements alone that A.B. was unconscious during the assault and that appellant knew it. When considered in light of A.B.'s testimony that she was intoxicated, had no memory of the assault and never consented to have sex with appellant, appellant's statements provide substantial evidence of both A.B.'s unconsciousness and his knowledge of it.

### Instruction on Lesser Included Offense

Appellant contends the trial court erred when it denied his request for an instruction on simple battery as a lesser included offense because the jury might have concluded that appellant kissed A.B. without her consent but that the subsequent sexual intercourse was consensual. We are not persuaded.

■ As our Supreme Court has explained, the trial court must instruct the jury on "any uncharged offense that is lesser than, and included in, a greater charged offense, but only if there is substantial evidence supporting a jury determination that the defendant was in fact guilty only of the lesser offense." (*People v. Parson* (2008) 44 Cal.4th 332, 348–349 [79 Cal.Rptr.3d 269, 187 P.3d 1].) In this context, substantial evidence is "evidence that a reasonable jury would find persuasive" that the lesser offense was committed, but not the greater. (*People v. Wilson* (2008) 43 Cal.4th 1, 16 [73 Cal.Rptr.3d 620, 178 P.3d 1113]; see also *People v. Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) "An uncharged offense is included in a greater charged offense if *either* (1) the greater offense, as defined by statute, cannot be committed without also committing the lesser (the elements test) *or*

(2) the language of the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test). [Citations.]" (*People v. Parson, supra*, 44 Cal.4th at p. 349.)

■ Simple battery is not a lesser included offense of the charged crime, rape of an unconscious person. Battery includes "any willful and unlawful use of force or violence upon the person of another." (§ 242.) Even a slight touching may constitute a battery, "if it is done in a rude or angry way." (CALCRIM No. 960.) The force at issue here need not be violent or severe, and it need not cause bodily harm or pain; rather it includes " ' "any wrongful act committed by means of physical force against the person of another . . . ." ' " (*People v. Myers* (1998) 61 Cal.App.4th 328, 335 [71 Cal.Rptr.2d 518], quoting *People v. Rocha* (1971) 3 Cal.3d 893, 899–900, fn. 12 [92 Cal.Rptr. 172, 479 P.2d 372].)

Rape of an unconscious person, by contrast, requires proof that (1) the defendant had sexual intercourse with the victim; (2) the defendant was not married to the victim at the time; (3) the victim was unable to resist because she was unconscious of the nature of the act; and (4) the defendant knew the victim was unable to resist because she was unconscious of the nature of the act. (§ 261, subd. (a)(4); CALCRIM No. 1003.) There is no requirement that the defendant use force or violence to accomplish the act of sexual intercourse. (*People v. Giardino* (2000) 82 Cal.App.4th 454, 461 [98 Cal.Rptr.2d 315] [regarding rape of an intoxicated woman, " 'neither force upon the part of the man, nor resistance upon the part of the woman, forms an element of the crime' "].) The act of sexual intercourse with an unconscious person is itself illegal, regardless of "the victim's 'advance consent' or the perpetrator's belief that the victim has consented in advance to the prohibited act." (*People v. Dancy* (2002) 102 Cal.App.4th 21, 37 [124 Cal.Rptr.2d 898].) Thus, an unconscious person could be raped within the meaning of section 261, subdivision (a)(4) without having been subjected to force or violence, or even to a harmful or offensive touching. As a result, battery is not a lesser included offense of rape of an unconscious person.

Even if battery were a lesser included offense, the trial court did not err in refusing the requested instruction because there was no substantial evidence to support it. Appellant's defense was that A.B. was conscious and the sex was consensual. There was no evidence that he kissed A.B. in a rude, angry or violent way, but immediately thereafter had consensual sex with her. His testimony was that she was not harmed or offended by the kissing and that they had consensual sex. Thus, the kissing he described did not amount to a battery. There was no evidentiary basis for an instruction on battery as a lesser included offense.

*Conclusion*

The judgment is affirmed.

Gilbert, P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 2012, S198272.