Filed 3/18/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E071542 |
| v. | (Super.Ct.No. RIF1703505) |
| MICHAEL JAMES MIRANDA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Charles J. Koosed, Judge. Affirmed in part, reversed in part with directions.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant Michael James Miranda.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Michael James Miranda was convicted on 13 counts charging sex crimes against two minor girls, including oral copulation of an unconscious person, rape of an unconscious person, and sexual penetration of an unconscious person. He was sentenced under the One Strike law. On appeal, he contends in part that the jury

1

should have been instructed on lesser included offenses, and that his ineligibility for youth offender parole hearings violates equal protection.

We agree with Miranda that battery is a lesser included offense of oral copulation of an unconscious person, rape of an unconscious person, and sexual penetration of an unconscious person. Given that battery requires only an offensive touching, it is impossible to commit any of these crimes without also committing battery against that person. We reject a Court of Appeal case that held otherwise.

Because of the evidence presented, we conclude that the trial court was required to instruct the jury on battery as a lesser included offense as to one of Miranda's crimes, oral copulation of an unconscious person. We reverse that conviction and vacate his sentence, as there was a reasonable probability that, absent the error, the jury would have convicted him of only battery if instructed as to that option. As to Miranda's other two crimes, the notion that he committed battery but not the greater crimes lacked a grounding in the evidence, so the trial court had no duty to instruct on battery as a lesser included offense. In addition, we reject Miranda's other challenges to his convictions, including his equal protection challenge.[1]

## I. FACTUAL AND PROCEDURAL HISTORY

We must in this appeal determine whether the trial court had a duty to instruct on a lesser included offense, which requires us to consider the evidence in the light most favorable to the defendant. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.)

---

[1] Undesignated statutory references are to the Penal Code.

We recount the facts below with this standard in mind. Additionally, we focus only on the circumstances surrounding the testimony of S.C., who was the victim of the crimes at issue in this appeal, though Miranda also was convicted of sex crimes against a second victim, A.C. Moreover, we generally focus only on those crimes committed against S.C. that are challenged in this appeal.

Born in 1998, Miranda moved into a family friend's household in his senior year of high school. Miranda's mother was going through a "hard time," and she asked her friend if Miranda could stay with them. The friend agreed; took Miranda in to live with her, her husband, and their five children; and "loved him like a son." A.C., the second victim not at issue here, was one of the friend's children.

S.C. is a cousin of the household's children and often spent weekends at their house. S.C. was 16 years old when the crimes took place.

At trial, S.C. described a 2017 incident where Miranda touched her vagina while she was "falling asleep":

"Q. What happens?

"A. I was falling asleep, and then I just felt somebody—well, I felt him touch me.

"Q. Okay.

"A. On like my thigh and then go up more.

"Q. And how much more did he go up?

"A. To my private area.

"Q. Now, I know you called it a private area. Do you know the adult names for the private area?

"A. My vagina.

"Q. Did he actually touch your vagina?

"A. Yes.

"Q. Did he touch you over the clothes or under the clothes?

"A. Both.

"Q. Okay. What were you doing as this is happening to you?

"A. Nothing.

"Q. Okay.

"A. I didn't move. I was too scared to do anything.

"Q. Did you realize what was happening to you right when you opened your eyes, or did it take you a little?

"A. Took me a while to realize."

Miranda then forced S.C.'s mouth open with his hands and put his penis inside. S.C. stated that she was "awake kind of when [Miranda] was touching me, but I wasn't fully alert, like, what was actually happening to me." She was "fully awake," however, by the time Miranda placed his penis inside her mouth. The first portion of this incident, as well as S.C.'s testimony that Miranda had touched her vagina on a few other occasions, formed the basis for Miranda's charge of sexual penetration of an unconscious person.

4

On September 8, 2017, S.C. was sleeping when she "woke up" because Miranda was licking her "butt."[2] S.C. stated that she first felt Miranda pull down her pants and underwear while she was "half asleep" and that she "didn't know what was going on until [she] actually felt something lick" her. She stated: "[I felt a] tug like somebody tugging at my bottoms, but I didn't really take much notice because I was too tired, but then when he actually licked me, that's what actually woke me up completely." S.C. stated that Miranda had licked her "butt area—on top of it" and that it was "not [her] anus, but [her] butt."

In a forensic interview that was played at trial and admitted into evidence, S.C. had stated that Miranda did more to her on that occasion. In that interview, she had stated that Miranda proceeded to lick her vagina.[3] When asked what part of the vagina Miranda licked, S.C. had said, "I'm not sure, because I was, like, half asleep when I felt something down there." But at trial, when asked, "Do you remember if [Miranda] only licked your butt, or did he lick somewhere else as well," she replied, "He just licked my butt." Later she was asked again, "Was it just the butt, or did it go on," and she replied, "Just my butt." Eventually Miranda stopped, pulled S.C.'s underwear back up, left, and

---

[2] The date was variously cited at trial as September 8 and September 9.

[3] As we understand it, S.C. used the word "vagina" colloquially to refer to the vulva, the external female sexual organs. (See *People v. Thomas* (2017) 15 Cal.App.5th 1063, 1067, fn. 3.)

5

S.C. "fell back asleep." This incident formed the basis for the oral copulation of an unconscious person charge.[4]

Shortly thereafter on that same night, S.C. woke up again and realized Miranda was on top of her and inserting his penis into her vagina. As she said during her forensic interview:

"[S.C.]: And then, um, like I said, I fell back asleep and then when I woke up again, he was, like, feeling inside of me.

"[Interviewer]: What was he go—what was going inside you?

"[S.C.]: His pe— his penis. I'm sorry [. . . .]

"[Interviewer]: Okay. That's okay. So his penis was going where inside you?

"[S.C.]: Um, in my vagina.

"[Interviewer]: In your vagina?

"[S.C.]: Yeah."

In describing this incident at trial, S.C. was asked, "Now, that's when you woke up, when you felt his weight and his penis into your vagina; is that correct," to which she replied, "Yes." Eventually, Miranda stopped and left the room. This incident formed the basis for Miranda's charge of rape of an unconscious person.[5]

---

[4] At trial, a criminalist testified that she found traces of what was very likely Miranda's saliva on the underwear S.C. wore on September 8.

[5] S.C. testified that, in a third incident on the same night, Miranda forced her mouth open and inserted his penis into her mouth. This incident formed the basis for Miranda's charge of forcible oral copulation of a minor 14 years old or older.

A few nights later, A.C.'s older sister woke up to Miranda attempting to open her legs. Miranda said he was looking for a laptop charger. Miranda left, but A.C.'s sister could not go back to sleep. She woke up S.C. and told her she believed Miranda had "tried to do something." S.C. started crying and said that Miranda had done things to her. A.C.'s sister woke up her parents, who confronted Miranda. Miranda denied wrongdoing. The parents then woke up A.C., who said that Miranda had been touching her as well.

Miranda was charged with one count of oral copulation of an unconscious person (former § 288a, subd. (f); count 1); one count of rape of an unconscious person (§ 261, subd. (a)(4); count 2); one count of sexual penetration of an unconscious person (§ 289, subd. (d); count 3); one count of forcible oral copulation of a minor 14 years old or older (former § 288a, subd. (c)(2)(C); count 4); and nine counts of lewd and lascivious acts on a child under 14 (§ 288, subd. (a); counts 5 through 13). Counts 1 through 4 related to S.C., while counts 5 through 13 related to A.C.; only counts 1 through 3 are at issue in this appeal. Miranda was also alleged to have committed a qualifying sex offense against more than one victim pursuant to section 667.61, subdivision (e)(4), part of the One Strike law.

The jury found Miranda guilty on all counts and found the One Strike allegation true. The trial court sentenced Miranda to a determinate term of 38 years plus a consecutive indeterminate term of 15 years to life. The trial court also ordered Miranda to pay a $300 restitution fine (§ 1202.4, subd. (b)), a $390 criminal conviction assessment

7

fee (Gov. Code, § 70373), and a $520 court operations assessment fee (§ 1465.8), in addition to a $300 parole revocation restitution fine (§ 1202.45) that the trial court ordered stayed.

## II.  ANALYSIS

### A.  *Lesser Included Offense*

Miranda contends that the jury should have been instructed on battery as a lesser included offense of counts 1 through 3, i.e., oral copulation of an unconscious person, rape of an unconscious person, and sexual penetration of an unconscious person.  He additionally contends that the error was prejudicial because there was a reasonable probability he would have been convicted of only battery absent the error.

The People disagree.  Relying on *People v. Hernandez* (2011) 200 Cal.App.4th 1000 (*Hernandez*), the People contend that battery is not a lesser included offense of these offenses.  *Hernandez* held that "battery is not a lesser included offense of rape of an unconscious person" because battery requires use of force or violence, while "[t]here is no requirement that [a] defendant use force or violence to accomplish the act of sexual intercourse."  (*Id.* at p. 1006.)  The People additionally contend that any supposed error is harmless.

For reasons we explain, we agree with Miranda that battery is a lesser included offense of oral copulation of an unconscious person, rape of an unconscious person, and sexual penetration of an unconscious person.  We therefore disagree with *Hernandez*.

8

This by itself does not mean the trial court committed error. "A trial court must instruct on a lesser included offense 'only if there is substantial evidence to support a jury's determination that the defendant was in fact only guilty of the lesser offense.'" (*People v. Williams* (1997) 16 Cal.4th 153, 227.) As to only count 1, oral copulation of an unconscious person, we agree with Miranda that there was substantial evidence to support a finding that he committed only battery. We find no substantial evidence to support a battery instruction as to the other two charges at issue here. The trial court therefore erred in not instructing the jury on battery only for count 1.

Finally, we find that the error on count 1 was prejudicial because Miranda had a reasonable probability of obtaining a battery verdict instead of his conviction on that count.

### 1. Applicable Law

"'California law has long provided that even absent a request, and over any party's objection, a trial court must instruct a criminal jury on any lesser offense "necessarily included" in the charged offense, if there is substantial evidence that only the lesser crime was committed.'" (*People v. Smith* (2013) 57 Cal.4th 232, 239 (*Smith*).)

"'This venerable instructional rule ensures that the jury may consider all supportable crimes necessarily included within the charge itself, thus encouraging the most accurate verdict permitted by the pleadings and the evidence.' [Citation.] '[T]he rule prevents either party, whether by design or inadvertence, from forcing an all-or-nothing choice between conviction of the stated offense on the one hand, or complete

9

acquittal on the other.  Hence, the rule encourages a verdict, within the charge chosen by the prosecution, that is neither "harsher [n]or more lenient than the evidence merits." [Citations.]'  [Citation.]  Thus, 'a trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence.  On the other hand, the court is not obliged to instruct on theories that have no such evidentiary support.'  [Citation.]"  (*Smith*, *supra*, 57 Cal.4th at pp. 239-240.)

"For purposes of determining a trial court's instructional duties, . . . 'a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser.'"  (*Smith*, *supra*, 57 Cal.4th at p. 240.)  We rely on the statutory elements test here.

### 2.  *Statutory Elements*

"A battery is any willful and unlawful use of force or violence upon the person of another."  (§ 242.)  It thus has two stated elements: (1) a use of "force or violence" that is (2) "willful and unlawful."  (See, e.g., *People v. Shockley* (2013) 58 Cal.4th 400, 408 (*Shockley*) (conc. & dis. opn. of Kennard, J.).)  As to the first element, "'[i]t has long been established that "the least touching" may constitute battery.  In other words, force against the person is enough, it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark."  (*Id.* at pp. 404-405.)  As to the second

10

element, a touching is unlawful if it is "'harmful or offensive.'" (*Shockley*, *supra*, at p. 404.)

The sexual crimes at issue here each involve an act of touching when the victim was unconscious. Former section 288a, subdivision (f) criminalizes oral copulation when a "victim is at the time unconscious of the nature of the act" and the perpetrator is aware of the unconsciousness.[6] Section 261, subdivision (a)(4) defines rape to mean sexual intercourse under the same circumstances, and section 289, subdivision (d) criminalizes sexual penetration under these circumstances as well.

Each of the above provisions defines the phrase "unconscious of the nature of the act" to mean that the victim is "incapable of resisting" because the victim meets one of four conditions, including that the victim "[w]as unconscious or asleep" or "[w]as not aware, knowing, perceiving, or cognizant that the act occurred." (Former § 288a, subd. (f)(1)-(2), §§ 261, subd. (a)(4)(A)-(B), 289, subd. (d)(1)-(2).)

Any of these sexual crimes also is a battery. Physically, a perpetrator cannot orally copulate, rape, or sexually penetrate an unconscious person by using something less severe than ""'the least touching'"" (*Shockley*, *supra*, 58 Cal.4th at p. 404). Additionally, oral copulation, rape, and sexual penetration of an unconscious person are all offensive touchings. (*Shockley*, *supra*, 58 Cal.4th at p. 404; see also *People v. Pinholster* (1992) 1 Cal.4th 865, 961 ["throwing a cup of urine in a person's face is a

---

[6] Former section 288a was renumbered as section 287 beginning January 1, 2019. (Stats. 2018, ch. 423, § 49.)

battery, since '[a]ny harmful or offensive touching constitutes an unlawful use of force or violence' and thus a battery"], disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459.)[7]  Accordingly, battery is a lesser included offense of these crimes because the greater cannot be committed without also committing the lesser.

*Hernandez* held otherwise.  In comparing battery to rape of an unconscious person, it stated:

"There is no requirement that the defendant use force or violence to accomplish the act of sexual intercourse.  [Citation.]  The act of sexual intercourse with an unconscious person is itself illegal, regardless of 'the victim's "advance consent" or the perpetrator's belief that the victim has consented in advance to the prohibited act.'  [Citation.]  Thus, an unconscious person could be raped within the meaning of section 261, subdivision (a)(4) without having been subjected to force or violence, or even to a harmful or offensive touching.  As a result, battery is not a lesser included offense of rape of an unconscious person."  (*Hernandez, supra*, 200 Cal.App.4th at p. 1006.)

At bottom, *Hernandez* held that one "could be raped . . . without having been subjected . . . to a harmful or offensive touching."  (*Hernandez, supra*, 200 Cal.App.4th

_____

    [7]  Additionally, by virtue of being "incapable of resisting," consent to the touching must necessarily be absent.  (*People v. Morales* (2013) 212 Cal.App.4th 583, 591 ["Under section 261.6, consent requires that the consenting party 'act freely and voluntarily and have knowledge of the nature of the act or transaction involved.'  One who is unconscious as defined in section 261, subdivision (a)(4), necessarily does not act freely and voluntarily with knowledge of the nature of the act."]; *People v. Dancy* (2002) 102 Cal.App.4th 21, 36 (*Dancy*) ["a man who intentionally engages in sexual intercourse with a woman he knows to be unconscious is clearly aware that he is wrongfully depriving the woman of her right to withhold her consent to the act at the time of penetration"].)

at p. 1006.) Analyzed closely, *Hernandez* alludes to two possible reasons why a rape of an unconscious person might not be a battery. First, it claims that the rape of an unconscious person might involve no force or violence, an element of a battery. Second, it raises an "advance consent" scenario wherein a person, unconscious during the rape, has consented to it earlier. Neither of these provides a situation where the rape of an unconscious person is not also a battery.

*Hernandez* is literally correct in stating that "[t]here is no requirement that [a] defendant use force or violence to accomplish the act of sexual intercourse." (*Hernandez*, *supra*, 200 Cal.App.4th at p. 1006.) That is true when the term "force" is defined as requiring something greater than, or different from, what is needed to accomplish the sexual act itself. (E.g., *People v. McCann* (2019) 41 Cal.App.5th 149, 157.) But in the context of battery, in contrast, the term "force" means only the "slightest degree of touching." (*In re B.L.* (2015) 239 Cal.App.4th 1491, 1495.) "'It has long been established that "the least touching" may constitute battery. In other words, force against the person is enough; it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave a mark.'" (*Shockley*, *supra*, 58 Cal.4th at p. 404.) With that definition of force, it is not possible to rape a person, whether the victim is conscious or unconscious, without at least the force (the slight degree of touching) required for a battery.

*Hernandez*'s "advance consent" scenario implicates a situation, likely quite rare, where a person consents in advance to being sexually violated while unconscious. This

situation still would be a battery.  Whether the consent of the victim can render a touching not "harmful or offensive" for purposes of battery depends on the nature of the touching and is defined by law.  "[C]onsent of the victim is not generally a defense to assault or battery, except in a situation involving ordinary physical contact or blows incident to sports such as football, boxing or wrestling.  [Citation.]  It is also the rule that the apparent consent of a person without legal capacity to give consent, such a child or insane person, is ineffective."  (*People v. Samuels* (1967) 250 Cal.App.2d 501, 513.)

Advance consent can render medical treatment not a battery, but this is only as defined by law.  (See *Cobbs v. Grant* (1972) 8 Cal.3d 229, 239-240.)  Battery occurs when a patient has given informed consent to a medical procedure that occurs while the patient is under anesthetic.  In contrast, however, under California law, advance consent to rape does not constitute valid legal consent, because such an advance decision eliminates the victim's ability to withdraw from the sexual activity while it occurs.  (*Dancy*, *supra*, 102 Cal.App.4th at pp. 36-37; see *People v. Smith* (2010) 191 Cal.App.4th 199, 208 [holding sexual battery is committed when victim "is unable to resist because of unconsciousness or intoxication"].)

Because the law does not recognize an unconscious person's advance consent to a rape, making the sexual act a crime, it is a battery to intentionally commit that act even if there was advance consent.  Battery is a general intent crime (*People v. Lara* (1996) 44 Cal.App.4th 102, 107), which means it requires the intent to do the act involved, not an intent to cause a resulting harm (e.g., *People v. Fontenot* (2019) 8 Cal.5th 57, 66).  As a

14

general intent crime, a battery does not occur when a person commits the act "based on a reasonable and honest belief that certain facts and circumstances exist which, if true, would render the act lawful." (*People v Reed* (1996) 53 Cal.App.4th 389, 396; *People v. Rivera* (1984) 157 Cal.App.3d 736, 742-743.) Where sex with an unconscious person is a rape and thus unlawful regardless of consent, it is not reasonable to believe that it is lawful, so the touching is a battery, just as it is a rape. As well, a minor cannot consent to a sex act in California, so it is not reasonable to believe that consent renders the sex act lawful; the act remains both a rape and a battery even if the minor consented.

The law in the medical context likewise defines the circumstances when a patient's advance consent to a procedure while unconscious means that a doctor has a reasonable belief that the procedure is lawful and thus does not commit a battery by performing it. A doctor commits a battery when deviating from the consent given to perform a substantially different procedure than the one for which consent was given (e.g., *Burchell v. Faculty Physicians & Surgeons of Loma Linda University School of Medicine* (2020) 54 Cal.App.5th 515, 524), but does not commit a battery if acting beyond consent due to an emergency, where consent is implied by law (*Cobbs v. Grant*, *supra*, 8 Cal.3d at pp. 243-244). Likewise, the law does not recognize a minor's consent to a medical procedure; for a minor, "the authority to consent is transferred to the patient's legal guardian or closest available relative." (*Id.* at p. 244.)

For these reasons, we conclude that conduct legally defined as rape is inherently harmful and offensive touching for purposes of battery. Any sexual act upon an

15

unconscious victim is also a battery. We thus hold that battery is a lesser included offense of the crimes involving sexually touching an unconscious victim. The practical consequence of this is that a battery jury instruction should be given in a case where a defendant is charged with committing a sex act upon an unconscious victim when substantial evidence supports a finding that the defendant touched the victim in a way other than charged (e.g., in a different body area than that required for the sex crime, or when the victim is conscious).

3. *Substantial Evidence*

"A trial court must instruct on a lesser included offense 'only if there is substantial evidence to support a jury's determination that the defendant was in fact only guilty of the lesser offense.'" (*People v. Williams*, *supra*, 16 Cal.4th at p. 227; see also *People v. Breverman* (1998) 19 Cal.4th 142, 177 (*Breverman*).) "This standard requires instructions on a lesser included offense whenever '"a jury composed of reasonable [persons] *could . . . conclude*[]"' that the lesser, but not the greater, offense was committed. [Citation.] In deciding whether evidence is 'substantial' in this context, a court determines only its bare legal sufficiency, not its weight." (*Breverman*, *supra*, at p. 177.) In doing so, we consider the evidence in the light most favorable to the defendant. (*People v. Millbrook*, *supra*, 222 Cal.App.4th at p. 1137.) Here, we find that such substantial evidence exists with regard to count 1, oral copulation of an unconscious person.

As noted above, oral copulation of an unconscious person requires that the victim be "unconscious of the nature of the act." This means that the victim must be "incapable of resisting" because he or she "[w]as unconscious or asleep" or "[w]as not aware, knowing, perceiving, or cognizant that the act occurred," among others. (Former § 288a, subd. (f)(1)-(2).) As cases interpreting this language have stated, "[i]t is settled that a victim need not be totally and physically unconscious." (*People v. Ogunmola* (1987) 193 Cal.App.3d 274, 279; see also *People v. Pham* (2009) 180 Cal.App.4th 919, 928 ["The unconsciousness requirement does not require proof the victim was totally and physically unconscious during the acts in question."]; *People v. Howard* (1981) 117 Cal.App.3d 53, 55.) "In this context, unconsciousness is related to the issue of consent . . . ." (*People v. Ogunmola*, *supra*, at p. 279.)

S.C.'s testimony regarding her state of consciousness could have led a reasonable jury to conclude that she was neither asleep, unconscious, nor unaware of what was happening when Miranda orally copulated her. S.C. stated that, on September 8, Miranda first pulled down her pants and underwear while she was "half asleep." Once Miranda "actually licked" her, however, she was woken up "completely." As she also stated, she "didn't know what was going on until [she] actually felt something lick" her. S.C. did not tell the forensic interviewer, however, that Miranda had only licked her vagina. Rather, she stated that Miranda had first licked the "top" of her "butt area" before then licking her vagina, and the record does not reveal how many moments may have passed in between. Thus, whether or not she was unconscious or unaware pursuant to former

17

section 288a, subdivision (f)(1) and (f)(2) when Miranda first started licking S.C., the jury could have found that she was fully awake and aware of what Miranda was doing once he orally copulated her by licking her vagina. Accordingly, portions of S.C.'s testimony, when viewed in the light most favorable to Miranda, would support a jury finding that S.C. was not "unconscious of the nature of the act" of oral copulation.

As to the counts charging rape or sexual penetration of an unconscious person, the lesser included instruction was not required. There was no ambiguity in the evidence regarding the incidents giving rise to those charges that would allow a reasonable jury to find that Miranda committed only battery. This is true even when we consider the evidence in the light most favorable to Miranda, as we have done in recounting the factual history.

Accordingly, we conclude the trial court had a sua sponte duty to instruct the jury on battery as a lesser included offense of oral copulation of an unconscious person, but not of the other charges. It did not give such an instruction.[8] We therefore consider whether the trial court's failure to do so was prejudicial.

*4. Prejudicial Error*

"In a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d

---

[8] The jury was instructed on attempted oral copulation of an unconscious person for count 1, but was not instructed as to battery.

818].” (*Breverman*, *supra*, 19 Cal.4th at p. 178.) This means that a “conviction of the charged offense may be reversed . . . only if, ‘after an examination of the entire cause, including the evidence’ [citation], it appears ‘reasonably probable’ the defendant would have obtained a more favorable outcome had the error not occurred [citation].” (*Ibid.*) Our Supreme Court has ““““”made clear that a ‘probability’ in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.”””””” (*People v. Sandoval* (2015) 62 Cal.4th 394, 422.)[9]

Although a court views the evidence in the light most favorable to a defendant to search for substantial evidence in deciding whether a court has a sua sponte duty to instruct, “[a]ppellate review under *Watson* . . . takes an entirely different view of the evidence.” (*Breverman*, *supra*, 19 Cal.4th at p. 177.) “Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result. Accordingly, a determination that a duty arose

---

[9] We do not address Miranda’s contention that our Supreme Court erred in *Breverman* by applying the *Watson* standard to errors regarding lesser included offenses. “Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court.” (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.)

19

to give instructions on a lesser included offense, and that the omission of such instructions in whole or in part was error, does not resolve the question whether the error was prejudicial. Application of the *Watson* standard of appellate review may disclose that, though error occurred, it was harmless." (*Id.* at pp. 177-178, fn. omitted.)

In viewing the evidence in this light, we conclude that there was a reasonable probability Miranda would have been convicted of only battery on count 1 had the instruction been given. The evidence supporting the "unconsciousness" element consisted only of S.C.'s testimony, and the testimony does not clearly establish that S.C. was "unconscious" (as the term has been construed) when Miranda orally copulated her. The incident came up several times during her forensic interview and trial testimony, and her statements in recounting these moments could support either a conclusion that she was already fully awake when orally copulated or that she was not. On the one hand, when asked during the forensic interview what part of the vagina Miranda licked, S.C. stated that she was not sure because she was "half asleep when [she] felt something down there." This statement suggests that she was unconscious at the time. On the other hand, S.C. also testified that, although she was "half asleep" when she felt Miranda pull down her pants and underwear, Miranda licking her is "what actually woke [her] up completely," and that she "didn't know what was going on until [she] actually felt something lick" her. Depending on how much time passed between when Miranda pulled down S.C.'s pants and underwear, licked her rear, and then licked her genitals, these latter statements could either suggest that she became fully awake the moment

20

Miranda licked her rear—in which case she was not "unconscious" when Miranda orally copulated her—or that she only became fully awake at some later moment. Accordingly, there exists a reasonable chance the jury would have found Miranda guilty of only battery on this count.

Miranda's defense was that he never inappropriately touched S.C. or A.C. at all. It is apparent from the jury's verdict—guilty on all 13 crimes charged—that the jury rejected this defense. But this does not mean that the jury accepted all the details of the sexual contact precisely as charged, where there were ambiguities in the trial evidence. We cannot rule out the reasonable possibility that, had the jury been properly instructed on lesser included offenses, it would have returned a verdict consistent with a view that Miranda had committed some lesser crime against S.C. (See, e.g., *People v. Campbell* (2015) 233 Cal.App.4th 148, 174 [reversing convictions where they "may have resulted from the 'all-or-nothing' choice the instructions gave the jury"].)

A jury should have the unimpeded ability to reach a verdict "'that is neither "harsher [n]or more lenient than the evidence merits"'" "'within the charge chosen by the prosecution,'" which is why trial courts have a duty to instruct on lesser included offenses even when requested by no party. (*Smith*, *supra*, 57 Cal.4th at pp. 239-240.) Because the failure to do so here is prejudicial, the conviction on count 1 is reversed.[10]

_____

[10] We have found a sentencing issue on count 1, raised by neither party, that, while made moot by the reversal, may nevertheless appear again on remand if left unaddressed.

At sentencing, the trial court imposed a One Strike sentence of 15 years to life on count 1, but oral copulation of an unconscious person is not a crime that a One Strike

*B. Sufficiency of the Evidence Regarding Victim Unconsciousness on Counts 2 and 3*

Miranda challenges the sufficiency of the evidence on counts 1 through 3, but we need only address counts 2 and 3 in light of our reversal on count 1. Miranda contends that there was no substantial evidence to show that S.C. was unconscious when the acts occurred. We disagree.

"The test for evaluating a sufficiency of evidence claim is deferential: 'whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We must 'view the evidence in the light most favorable to the People' and 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] We must also 'accept logical inferences that the jury might have drawn from the circumstantial evidence.' [Citation.]" (*People v. Flores* (2020) 9 Cal.5th 371, 411.) A sense that "'the circumstances also

---

sentence can attach to. Section 667.61, subdivision (c), which lists the applicable predicate crimes, includes certain forms of oral copulation, but it does not include oral copulation of an unconscious person. (See § 667.61, subd. (c)(7).) Rather, the trial court should have imposed a One Strike sentence on count 4, forcible oral copulation of a minor 14 years old or older. That crime is listed in section 667.61, subdivision (c)(7), and it also was the predicate charge relating to S.C. the jury was told to consider in determining whether the multiple-victim allegation was true. (See § 667.61, subd. (c)(7) [listing former § 288a, subd. (c)(2)(C), forcible oral copulation of a minor 14 or older].)

Moreover, the oversight may have added two years to Miranda's total sentence, assuming the trial court would have imposed the midterm on count 1 (as it did on count 4) had the error not occurred. Although the midterm sentence for count 4 is eight years, the midterm sentence for count 1 is only six years. (See former § 288a, subds. (c)(2)(A) [providing midterm sentence of eight years for forcible oral copulation of a minor 14 years old or older], (f) [providing midterm sentence of six years for oral copulation of an unconscious person].) As the trial court stated at sentencing, Miranda was being sentenced to the midterm sentence on count 4 "due to the mitigating circumstances on his part," and it is at least plausible to believe the trial court would have similarly imposed the midterm sentence on count 1 if it imposed the One Strike sentence on count 4 instead.

22

might reasonably be reconciled with a contrary finding would not warrant reversal of the judgment.'" (*People v. Lewis* (2009) 46 Cal.4th 1255, 1290.)

The evidence was sufficient to show that S.C. was unconscious of the nature of Miranda's acts when he raped her and when he sexually penetrated her. As discussed in the previous section, complete unconsciousness is not required. (See *People v. Ogunmola*, *supra*, 193 Cal.App.3d at p. 279 ["In this context, unconscious is related to the issue of consent . . . ."]; *Dancy*, *supra*, 102 Cal.App.4th at p. 36 ["a man who intentionally engages in sexual intercourse with a woman he knows to be unconscious is clearly aware that he is wrongfully depriving the woman of her right to withhold her consent to the act at the time of penetration"].)

We have already found that, when viewed in the light most favorable to Miranda, there was no substantial evidence that Miranda committed only battery because, for instance, the unconsciousness element of counts 2 or 3 were not satisfied. It should come as no surprise, then, that when we view the evidence in the light most favorable to the People, we find sufficient evidence that S.C. was unconscious of the nature of Miranda's acts during the other incidents. As to count 2, rape of an unconscious person, S.C. stated that later on September 8, S.C. "woke up" to realize that Miranda's penis was inside her. As to count 3, sexual penetration of an unconscious person, S.C. testified that on one occasion S.C. felt Miranda touch her genitals underneath her clothes. This occurred as she "was falling asleep" and that it "[t]ook [her] a while to realize" what was happening.

23

Accordingly, on this record, there was sufficient evidence for the jury to conclude that the "unconscious" element of counts 2 and 3 were satisfied.

*C. Eligibility for Youth Offender Parole Hearings Under One Strike Law*

Section 3051 gives "youth offenders" committed to long prison sentences parole suitability hearings beginning in their 15th, 20th, or 25th year of incarceration, depending on the circumstances. (§ 3051, subds. (a)-(b).) In enacting section 3051, the Legislature found that "youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society." (Stats. 2013, ch. 312, § 1.) It thus sought to "create a process by which growth and maturity of youthful offenders can be assessed and a meaningful opportunity for release established." (*Ibid.*)

Originally, section 3051 applied only to those who were juveniles (i.e., under 18) at the time they committed a "controlling offense," the "offense or enhancement for which any sentencing court imposed the longest term of imprisonment" (§ 3051, subd. (a)(2)(B)). (See *People v. Williams* (2020) 47 Cal.App.5th 475, 488, review granted July 22, 2020, S262229 (*Williams*).) Section 3051 was then expanded over time to make those who were younger than 23, and then those who were 25 or younger, at the time of the controlling offense to be eligible for parole hearings as well. (*People v. Williams*,

*supra*, at p. 488*.*)  Those sentenced under the One Strike law, however, are excluded from

eligibility.  (§ 3051, subd. (h).)[11]

Miranda, who was 18 years old when first charged with the crimes, was sentenced

under the One Strike law and is therefore ineligible for youth offender parole hearings.

He contends that his exclusion violates his right to equal protection under the United

States and California Constitutions because others, such as certain youth offenders

convicted of first degree murder, are not so excluded.  Our Supreme Court has granted

review on this issue.  (See *Williams*, *supra*, 47 Cal.App.5th 475, review granted July 22,

2020, S262229.)

Our reversal on count 1 means that his sentence is vacated, but the trial court is

sure to impose a One Strike sentence on resentencing, both because section 667.61,

subdivision (b) uses the term "shall" and because the validity of his One Strike sentence

has not been challenged on appeal.[12]  We therefore consider his claim and find that

section 3051, subdivision (h) does not violate equal protection.

---

[11]  Also excluded from section 3051 are those sentenced under the Three Strikes
law, those who receive a life sentence without the possibility of parole (LWOP) for a
controlling offense committed when 18 or older, and those who commit an additional
crime once 26 or older that requires malice aforethought or results in a life sentence.
(§ 3051, subd. (h).)

[12]  Although we have independently discovered that the One Strike sentence was
imposed on the wrong count (see *ante*, fn. 10), we do not find, and Miranda has not
contended, that imposing a One Strike sentence on the *correct* count would be improper.

*1. Similarly Situated*

"""The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.""" (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.) The People contend that persons convicted of different crimes are not similarly situated for equal protection purposes. Although this may be true as a general matter, in *People v. Hofsheier* (2006) 37 Cal.4th 1185 (*Hofsheier*), overruled on another ground in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 875, our Supreme Court rejected the claim that individuals convicted of different crimes are *never* similarly situated.

*Hofsheier* stated that "[i]t may well be that in most cases . . . persons who commit different crimes are not similarly situated, but there is not and cannot be an absolute rule to this effect, because the decision of the Legislature to distinguish between similar criminal acts is itself a decision subject to equal protection scrutiny." (*Hofsheier*, *supra*, 60 Cal.4th at p. 1199, fn. omitted.) "'The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes. [Citation.] It also imposes a requirement of some rationality in the nature of the class singled out.' (*Rinaldi v. Yeager* (1966) 384 U.S. 305, 308-309, [16 L.Ed.2d 577, 86 S.Ct. 1497]; see *People v. Nguyen* (1997) 54 Cal.App.4th 705, 714, [63 Cal.Rptr.2d 173].) Otherwise, the state could arbitrarily discriminate between similarly situated persons simply by classifying their conduct under different criminal statutes." (*Hofsheier*, *supra*, at p.

1199.) "[T]he equal protection clause," *Hofsheier* noted, was indeed "created in part to nullify penal codes in former slave states that classified offenses against Blacks as different crimes, with lesser penalties, than offenses against Whites." (*Id.* at p. 1199, fn. 4.)

The question then, appropriately framed, is not "'whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged."'" (*Hofsheier*, *supra*, 37 Cal.4th at pp. 1199-1200.) Here, both someone 25 or younger who commits a One Strike crime and someone 25 or younger who commits first degree murder are youth offenders who have committed serious crimes. Because section 3051 "establish[es] a parole eligibility mechanism that provides a [youth offender] . . . the opportunity to obtain release when he or she has shown that he or she has rehabilitated and gained maturity" (Stats. 2013, ch. 312, § 1), individuals such as Miranda are similarly situated with those who, through the commission of other crimes, are eligible for youth offender parole hearings.[13]

---

[13] *In re Williams* (2020) 57 Cal.App.5th 427, which also rejected an equal protection challenge to section 3051, suggested—but seemingly stopped short of holding—that someone under 25 sentenced to LWOP is not similarly situated to someone under 25 sentenced to a parole-eligible life sentence. (See *id.* at p. 435 ["We disagree . . . that youth offenders sentenced to LWOP and those youth offenders sentenced to parole-eligible life terms are similarly situated *with respect to the Legislature's . . .* goal[ of] calibrat[ing] sentences in accordance with youthful offenders' diminished culpability."], italics added; see also *ibid.* ["Petitioner argues, and we are inclined to agree, that youth offenders sentenced to LWOP and those sentenced to . . . parole-eligible life terms are similarly situated with respect to the Legislature's . . . goal[ of] account[ing] for youthful offenders' potential for growth and rehabilitation."].) In doing so, *In re Williams* relied on the same partially inaccurate proposition the People rely on here—that persons convicted of different crimes are not

27

*2. Rational Basis*

"Where, as here, a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.'" (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) Under rational basis review, "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' [Citation.] In other words, the legislation survives constitutional scrutiny as long as there is '"any reasonably conceivable state of facts that could provide a rational basis for the classification."'" (*Ibid.*)

Importantly, rational basis review "does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in '"rational speculation"' as to the justifications for the legislative choice. [Citation.] It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.'" (*People v. Turnage*, *supra*, 55 Cal.4th at pp. 74-75.)

---

similarly situated. (See *ibid.*) So too did *People v. Moseley* (2021) 59 Cal.App.5th 1160 (*Moseley*)), another case that rejected an equal protection challenge to section 3051. In *Moseley*, however, the court expressly stated that youthful sex offenders are not similarly situated to youthful murderers. (See *id.* at p. 1169 ["Moseley, a youthful sex offender, is not similarly situated to a youthful murderer as they are different crimes."].) To the extent *In re Williams* and *Moseley* stand for the proposition that an equal protection challenge to section 3051 for individuals such as Miranda fails on the "similarly situated" prong, we disagree for the reasons stated above.

28

Here, although the Legislature declared its intent in enacting section 3051, nothing in the legislative history similarly explains why it chose to exclude One Strike offenders such as Miranda. What is clear is that section 3051 was meant to reform the practice of imprisoning youth offenders for lengthy sentences without any meaningful possibility of parole. In *People v. Caballero* (2012) 55 Cal.4th 262, our Supreme Court urged the Legislature "to enact legislation establishing a parole eligibility mechanism that provides a defendant serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or she committed as a juvenile with the opportunity to obtain release on a showing of rehabilitation and maturity." (*Id.* at p. 269, fn. 5.) "The Legislature complied and then went a step further, creating a parole eligibility mechanism that includes homicide defendants." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 194 (*Edwards*); see also Stats. 2013, ch. 312, § 1 ["The purpose of this act is to establish a parole eligibility mechanism . . . in accordance with the decision of the California Supreme Court in [*People v. Caballero* (2012),] 55 Cal.4th 262 and the decisions of the United States Supreme Court in *Graham*[ *v. Florida*] (2010) 560 U.S. 48, and *Miller* [*v. Alabama* (2012)] 183 L.Ed.2d 407."].) While creating a mechanism for youth offenders generally to be considered for early release, however, it also opted to not extend that reform to certain individuals such as Miranda.

We see two reasons why the Legislature's decision to make One Strikers ineligible for youth offender parole hearings is rational. The first is that, as one of a series of reform measures where the Legislature has incrementally taken steps to expand the

situations in which youth offenders are treated differently from adult offenders, the Legislature could have thought that extending section 3051 to One Strikers was too large an additional reform for the current moment. As the United States Supreme Court has repeatedly emphasized, "[e]vils in the same field may be of different dimensions and proportions, requiring different remedies," and reform may validly "take one step at a time," "select[ing] one phase of one field and apply[ing] a remedy there, neglecting the others." (*Williamson v. Lee Optical of Oklahoma, Inc.* (1955) 348 U.S. 483, 489; see also *Roschen v. Ward* (1929) 279 U.S. 337, 339 ["[a] statute is not invalid under the Constitution because it might have gone farther than it did"]; *Semler v. Oregon State Bd. of Dental Examiners* (1935) 294 U.S. 608, 610 [a legislature is not "bound . . . to strike at all evils at the same time"]; *Railway Exp. Agency v. People of State of New York* (1949) 336 U.S. 106, 110 ["It is no requirement of equal protection that all evils of the same genus be eradicated or none at all."]; *F.C.C. v. Beach Communications, Inc.* (1993) 508 U.S. 307, 316 ["the legislature must be allowed leeway to approach a perceived problem incrementally"].) Accordingly, an incremental approach may be constitutionally sufficient, at least where there is a rational basis for the manner in which the Legislature has proceeded to address different dimensions or proportions of a problem. The Legislature's gradual expansion of section 3051 to include those 25 and younger shows that this reform has indeed progressed in such an incremental manner.

The second reason, closely related to the first, is that the Legislature may have selectively extended section 3051's benefits to some but not all as a means of testing

whether youth offender parole hearings will benefit or harm society as a whole. (See *People v. Acosta* (2015) 242 Cal.App.4th 521, 527-528 ["We have no difficulty concluding that the electorate could rationally extend misdemeanor punishment to some nonviolent offenses but not to others, as a means of testing whether Proposition 47 has a positive or negative impact on the criminal justice system."].) As with the first, this second rationale is based on the rule that reforms need not be all-or-nothing.

Importantly, this is not a situation where there can be no rational basis for the classification itself, for instance, if eligibility for youth offender parole hearings turns on a prisoner's height or hair color. (See *Armour v. City of Indianapolis, Ind.* (2012) 566 U.S. 673, 681 [the "'relationship of the classification to'" a legislative goal may not be "'so attenuated as to render the distinction arbitrary or irrational'"]; *Hofsheier*, *supra*, 60 Cal.4th at p. 1199 [equal protection "imposes a requirement of some rationality in the nature of the class singled out"].) Rather, the Legislature appears to have excluded from early parole eligibility those whom it saw as exceptionally likely to reoffend. The One Strike law, for instance, reaches only serious sex crimes, and the electorate, in passing an initiative amending the One Strike law, has found that sex offenders "have very high recidivism rates," "are the least likely to be cured[,] and [are] the most likely to reoffend." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 2(b), p. 127.) Similarly, the Three Strikes law has an "unambiguous purpose" of "provid[ing] greater punishment for recidivists." (*People v. Davis* (1997) 15 Cal.4th 1096, 1099; see § 667, subd. (b).) By excluding youth offenders convicted under either of these laws, the

31

Legislature appears to have drawn a line at recidivism risk. We cannot say that line was arbitrary or irrational. (See also *Moseley*, *supra*, 59 Cal.App.5th at p. 1170 [rejecting equal protection challenge to section 3051, subdivision (h) because "the risk of recidivism provides a rational basis"]; *Williams*, *supra*, 47 Cal.App.5th at p. 493.)

In contending otherwise, Miranda relies on *Edwards*, which held that the exclusion of One Strikers in section 3051, subdivision (h) violated equal protection. (*Edwards*, *supra*, 34 Cal.App.5th at p. 197.) But there the court relied on the fact that the People had "cite[d] no evidence that violent rapists recidivate more than other felons." (*Id.* at p. 199.) However, the electoral findings cited above reflect a contrary understanding, and their adoption may have additionally given the Legislature pause when considering whether to extend a benefit to One Striker sex offenders.[14] Additionally, *Edwards* did not cite or rely on the United States Supreme Court's repeated admonition that "the legislature must be allowed leeway to approach a perceived problem incrementally" (*F.C.C. v. Beach Communications, Inc.*, *supra*, 508 U.S. at p. 316). For these reasons, as well as those stated in *Williams*, *supra*, 47 Cal.App.5th at pp. 492-493, we decline to follow *Edwards*.

---

[14] *Edwards* also cited an opinion, since vacated, that in turn cited a report concluding juvenile violent sex offenders had a lower recidivism rate than most other types of offenders. (*Edwards*, *supra*, 34 Cal.App.5th at p. 199, citing *People v. Bell* (2016) 3 Cal.App.5th 865, ordered vacated (June 13, 2018, S238339).) But as that vacated opinion then went on to note, "one report that reaches contrary conclusions does not mean that the Legislature's classification of crimes is unreasonable." (*People v. Bell*, *supra*, 3 Cal.App.5th at p. 880.)

32

Accordingly, we find that section 3051, subdivision (h) does not violate equal protection.  (Accord, *Moseley*, *supra*, 59 Cal.App.5th at p. 1170; *In re Williams*, *supra*, 57 Cal.App.5th at p. 436; *Williams*, *supra*, 47 Cal.App.5th at p. 493.)

*D.*  Dueñas *Error*

Relying on *Dueñas*, Miranda contends that the trial court violated his due process rights when it imposed $1,510 in court operations assessments, conviction assessments, and restitution fines on him without finding that he had a present ability to pay.

Because we reverse his conviction in part, we need not reach the merits of his arguments here.  Miranda will have an opportunity to raise such challenges before the trial court on remand.

## III.  DISPOSITION

The conviction on count 1 is reversed, Miranda's sentence is vacated in its entirety, and the matter is remanded for further proceedings consistent with this opinion. In all other respects, the judgment is affirmed.

CERTIFIED FOR PUBLICATION

RAPHAEL                
J.

We concur:

McKINSTER            
Acting P. J.

SLOUGH            
J.

33