Filed 5/9/22  P. v. Hernandez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>FRANCISCO LEONARDO HERNANDEZ,<br><br>    Defendant and Appellant. | G060932<br><br>(Super. Ct. No. C1802813)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Santa Clara County, Shelyna V. Brown, Judge.  Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Katie L. Stowe and Karen Z. Bovarnick, Deputy Attorneys General, for Plaintiff and Respondent.

Francisco Leonardo Hernandez appeals from a judgment after a jury convicted him of oral copulation and sodomy by an intoxicating substance, and oral copulation and sodomy with an unconscious person. He argues the trial court abused its discretion by excluding evidence and insufficient evidence supports the latter two convictions. We disagree and affirm the judgment.

FACTS

I. *Substantive Facts*

Michael Dougherty invited James Doe[1] to a concert, and they agreed to meet at the auditorium at 8:00 p.m. Between 3:30 and 7:00 p.m., James, who weighed about 182 pounds, drank seven 16-ounce Bud Lights. He cooked dinner for his wife, Kerry Doe (Kerry), but he abstained because he did not want to interfere with his "buzz."

About 7:00 p.m., James went to the light rail stop, bought a pass that allowed him unlimited rides for the evening, and got on the train. James missed his intended stop and exited the train one or two stops past the auditorium. James texted Dougherty, who told James to meet him at 8:30. James went to a bar to use the restroom, and had two 16-ounce Bud Lights.

James met Dougherty at the appointed time. The auditorium did not sell Bud Light, so they ordered IPAs, a beer with a higher alcohol content. James had at least three and as many as five 16-ounce IPAs.

The concert ended about 11:00 p.m., and they went in search of more alcohol. At the first bar, the bouncer refused them entry because James was too intoxicated. At the bar next door, they each ordered a Bud Light. About 30 to 45 minutes later, they went across the street to a bar and each had one whiskey.

---

[1] The record does not reveal the victim's full name. Before trial, the parties agreed to refer to him as James Doe, or Doe. Because the parties below, and on appeal, refer to him as James Doe, we will continue to do so.

About midnight, Dougherty thought James was intoxicated—heavy eyes, slurring words, and staggering "a little bit." Dougherty used his own cell phone to enter James's home address into the Uber application. When the truck arrived, Dougherty verified it was the correct vehicle. Dougherty opened the door and made sure James got inside before closing the door. James did not remember getting into the vehicle.

James's next memory was being shaken awake to find himself lying on the backseat with his head toward the driver's side and his feet toward the passengers' side. His pants were unbuttoned and pulled down, and his hands were by his sides. Hernandez was aggressively stroking his penis "to get the erection – [his] penis hard, erect, like, aggressively, like, to stimulate." Hernandez put his mouth on James's penis. James did not want Hernandez doing this, but he passed out.

James's next memory was he was sitting on the backseat but more upright with his hands by his sides. He saw "[t]his backside of this man coming down on to me." James felt Hernandez forcing his "erect[]" penis into Hernandez's rectum. He was sure his penis penetrated Hernandez's rectum because he felt a warm sensation similar to vaginal intercourse. When James yelled to stop, Hernandez got off. James got out of the truck and walked home. Hernandez drove away. Uber's global positioning system records showed Hernandez parked near James's home from 12:55 to 1:19 a.m.

James fell asleep on the living room couch. Kerry woke up and found him on the couch. She tried to wake him up, but "[h]e was just out." Sometime later, he woke up and went to his bed. Kerry was getting ready for work. James told her that he thought something happened without telling her any details, and he fell back asleep.

When James woke up at 8:27 a.m., he was confused about whether the assault was real or a nightmare. He sent Dougherty a text message asking if he called James an Uber and to call him. He sent additional texts stating he was "fuuuuxjed up", did not remember anything after the bar, and passed out in Hernandez's truck. James showered. That afternoon, Dougherty texted James that he called an Uber and put him in

the vehicle. James felt "sick," "angry," and "upset" because it confirmed he had been assaulted. James called Kerry and "frantic[ally]" told her what happened. She told him to report the assault to the police, which he did.

A sexual assault response team (SART) nurse interviewed and examined James. The nurse described him as in "'shock.'"

Later that evening, Detective Tony Vera interviewed Hernandez at the police station.[2] Hernandez initially stated he picked up a man, James, and dropped him off. When Vera asked him how long James was in the truck, he said James was lying down and did not want to get out. Hernandez said he tried to get James out of his truck.

After Vera asked what else happened, Hernandez said James pulled down his own zipper and said to touch him. Vera asked what happened next. Hernandez said the following: "Uh I just touched him. I got tempted to touch him. I'm not going to lie." Vera asked what happened next. Hernandez said James got into the back seat, and he tried to get James to leave but he would not. Hernandez told James that he could not stay in the truck, and James said he did not remember who he was. After he got James out of the truck, Hernandez got back into the driver's seat and closed the door. James opened the driver's side door and asked about the woman he was with. Hernandez told him, "'I've just brought you.'" Vera reviewed Hernandez's story, and Hernandez admitted that when James said to touch him, he touched James's penis on top of his pants because he was curious. Hernandez said that was all that happened.

Vera told Hernandez there were cameras where he parked and to tell the truth. Hernandez admitted he got into the back of the truck and orally copulated James. He added James grabbed his head to do it more.

Hernandez said he stopped before getting to James's house and James would not get out. Hernandez got out, went to the back seat, unfastened the seat belt, and

---

[2]        The prosecutor played a video recording of the interview for the jury.

4

tried to get James out of the truck. James pulled down his zipper and told Hernandez to touch him. Hernandez said James grabbed his hand and forced Hernandez to touch him. Hernandez said James got out of the truck and demanded he pull up James's zipper, which he did, and James got back in the truck and laid down. Hernandez said he touched James again and told him to get out. James grabbed Hernandez and told him to orally copulate him, which he did.

Hernandez admitted he got into the back seat and pulled down his own pants. James told him to get away, which he did. When Vera asked him why he did that, Hernandez replied he was curious to see what it felt like to be with a man. Hernandez insisted James pulled out his penis and made it erect. Hernandez said James was drunk enough he would not remember anything. He believed James was "practically asleep" during the ride and they "didn't speak at all." Vera arrested Hernandez.[3]

## II. Procedural Facts

A second amended information charged Hernandez with the following: oral copulation by an intoxicating substance (former Pen. Code, § 288a, subd. (i),[4] all further statutory references are to the Penal Code, unless otherwise indicated) (count 1); oral copulation with an unconscious person (former § 288a, subd. (f) (count 2); sodomy by an intoxicating substance (§ 286, subd. (i)) (count 3); and sodomy with an unconscious person (§ 286, subd. (f)) (count 4).

At the preliminary hearing, James testified he drank at least 12 beers and one shot of whiskey that day. Before trial, Hernandez filed a motion to admit evidence Kerry told a prosecution investigator that James cannot get an erection when he is intoxicated (Evid. Code, §§ 782, 1103). Kerry said the following: "'How could you

---

[3]    At trial, the parties stipulated a SART nurse examined Hernandez, but she did not examine his anus.

[4]    Section 288a was renumbered as section 287 without substantive change. (Stats. 2018, ch. 423, § 49.)

even get hard. . . . I was upset . . . how are you getting a hand job? Don't you have drunk dick? Cause I know when he drinks, nothing is going to happen. . . . I know he was completely drunk and I know it would have been hard for him to be hard.'" Hernandez reasoned the evidence was relevant to prove James was not intoxicated and thus consented to the sex.

At the hearing on the in limine motions, Hernandez's trial counsel argued the evidence was relevant because it demonstrated James was not that intoxicated, which was "an element of the offense." The prosecutor contended the evidence had no probative value because it was "different people," "different circumstances," and "different intents," and was "compar[ing] apples and oranges". The trial court ruled Kerry's statement regarding her experience was inadmissible pursuant to Evidence Code section 352 because it invited speculation.

At trial, the prosecution presented documentary evidence James drank seven beers at home and two beers before he arrived at the auditorium. On cross-examination, James told an officer he drank eight beers and one shot of whiskey that night. He did not tell the officer about the seven beers he drank earlier that day at home because he thought the inquiry was limited to what he drank that night.

Mark Burry a forensic toxicologist testified for the prosecution. When presented with a hypothetical question rooted in the facts of the case, Burry opined a person's blood alcohol concentration would be 0.24 and 0.33 percent alcohol. On cross-examination, Hernandez's trial counsel asked Burry to calculate the blood alcohol level based only on what James drank beginning when he arrived at the bar about 8:30 p.m. Burry opined a person's blood alcohol concentration would be 0.16 and 0.21 percent alcohol. He agreed a person intoxicated enough to suffer a "blackout" or complete memory loss could still perform sex.

6

The jury convicted Hernandez of all counts.[5] The trial court sentenced Hernandez to six years on count 1. The court imposed a concurrent term on count 3 and imposed and stayed terms on counts 2 and 4.

DISCUSSION

## I. *Exclusion of Evidence*

Hernandez argues the trial court erred by excluding Kerry's statement because it prevented him from presenting a defense. We disagree.

In criminal cases, the general rule is evidence is relevant and admissible if it tends to prove or disprove an issue before the jury. (*People v. Freeman* (1994) 8 Cal.4th 450, 491; Evid. Code, §§ 210, 350.) However, "[e]vidence may be excluded under Evidence Code section 352 'if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' An exercise of discretion under Evidence Code section 352 will be affirmed unless

---

[5] The clerk's transcript does not include the jury instructions, the jury's request to have testimony readback, or the verdicts as required by California Rules of Court, rule 8.320(b)(4), (5), and (6). On February 21, 2020, Hernandez's appellate counsel sent a letter indicating the clerk's transcript was missing the verdict forms and the probation report. Three days later, counsel sent another letter indicating the clerk's transcript was missing his motion to admit evidence. That same day, the Sixth Appellate District clerk's office notified the parties the trial court was preparing an augmentation to the record. It does not appear that happened with the onset of the COVID-19 pandemic.

On November 17, 2020, counsel filed a motion to augment the record with the motion to admit evidence and the probation report. Two days later, that court granted the motion and deemed those two documents part of the record. Our review of the record indicates no action was taken on Hernandez's request to augment the record with the verdict forms. Additionally, it does not appear the court was notified the clerk's transcript does not include the jury instructions or the jury's request for readback of testimony. We note, however, Hernandez's appellate counsel cites to various CALCRIM instructions, relying on the reporter's transcript to do so. In any event, neither the jury instructions nor the jury's request are necessary for resolution of the appeal.

it was arbitrary, capricious, or patently absurd and the ruling resulted in a miscarriage of justice. [Citation.]" (*People v. Winbush* (2017) 2 Cal.5th 402, 469.)

"'Evidence Code section 352 must bow to the due process right of a defendant to a fair trial and to his right to present all relevant evidence of *significant* probative value to his defense. . . . [T]he exclusion of evidence, vital to a defendant's defense, constitute[s] a denial of a fair trial in violation of constitutional due process requirements.'" (*People v. Babbitt* (1988) 45 Cal.3d 660, 684.) However, a defendant does not have "a constitutional right to present all relevant evidence in his favor, no matter how limited in probative value." (*Ibid*.) Rather, a trial court may exclude such evidence pursuant to Evidence Code section 352. (*Ibid*.; *Chambers v. Mississippi* (1973) 410 U.S. 284, 302 [accused must comply with State's procedural and evidentiary rules].)

Here, Kerry's statement had little, if any, probative value in light of the differences between her experiences and the offenses. (*People v. Mestas* (2013) 217 Cal.App.4th 1509, 1512 ["the alleged conduct was not sufficiently similar to the conduct charged in this case and, therefore, was not highly probative of the victims' credibility in this case"].) Although James and Kerry had been married for years, the probative value of evidence of circumstances related to consensual marital relations was slight compared to non-consensual allegedly criminal conduct.

Additionally, the trial court's conclusion Evidence Code section 352 required exclusion of the evidence was not patently absurd. Because Kerry's statement was based on experience completely dissimilar to the offenses, admission of the evidence would only serve to confuse the jury and cause them to speculate about how Kerry's experience related to the charges. Thus, the court did not abuse its discretion by excluding Kerry's statement.

Hernandez's "attempt to inflate garden-variety evidentiary questions into constitutional ones is unpersuasive." (*People v. Boyette* (2002) 29 Cal.4th 381, 427.) "'As a general matter, the ordinary rules of evidence do not impermissibly infringe on the

8

accused's [constitutional] right to present a defense. Courts retain . . . a traditional and intrinsic power to exercise discretion to control the admission of evidence in the interests of orderly procedure and the avoidance of prejudice. [Citation.]'" (*People v. Cudjo* (1993) 6 Cal.4th 585, 611.) Indeed, "only evidentiary error amounting to a complete preclusion of a defense violates a defendant's federal constitutional right to present a defense. [Citation.]" (*People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4.) We review the application of the ordinary rules of evidence for harmless error under *People* v. *Watson* (1956) 46 Cal.2d 818. (*People v. McNeal* (2009) 46 Cal.4th 1183, 1203.)

Contrary to Hernandez's claim, the court's exclusion of Kerry's statement did not prevent him from presenting a defense. Hernandez's defense was James invited the sexual activity. James testified he had an erection, and Burry opined a person could be so intoxicated they blacked out but could still perform sex. This was evidence from which the jury could conclude James was aroused and willingly participated in sexual activity with Hernandez. Any evidence of James's ability to have an erection when intoxicated was irrelevant given Hernandez's insistence to Vera that James pulled out his penis and made it erect. The court's exclusion of Kerry's statement did not prevent Hernandez from preventing his defense of consent.

Additionally, based on the record before us, it is not reasonably probable Hernandez would have received a more favorable outcome had the trial court admitted Kerry's statement. Evidence of Hernandez's guilt was overwhelming. The evidence established James began drinking at 3:30 p.m. and did not stop until midnight without having eaten. About 11:00 p.m., a bouncer refused James entrance because he appeared too intoxicated. An hour later, Dougherty thought James intoxicated and secured a ride home for him. Sometime the next morning, Kerry found James asleep on the couch and she could not wake him up. Later, James texted Dougherty he was extremely intoxicated and passed out in Hernandez's truck.

9

James's intoxication level was corroborated by Hernandez's statements. He said James was passed out, had slept in the car during the drive, and was so sleepy he refused to leave the car. Hernandez stated James said he did not remember who he was and who he was with. Hernandez acknowledged he did not take the severely intoxicated and unconscious James home—he was parked down the street for 25 minutes. And although his story changed, he admitted he touched James's penis and orally copulated him because he was curious what it was like to be with a man. He also revealed he pulled his pants down but stopped short of admitting he committed sodomy. Hernandez's acknowledgement James was unconscious coupled with his admission he engaged in sexual activity with James was an insurmountable obstacle to overcome, and it is not reasonably probable Kerry's statement would have benefitted Hernandez. Therefore, the trial court did not err, and Hernandez was not prejudiced.

II. *Sufficiency of the Evidence*

Hernandez contends insufficient evidence supports his convictions for count 2 and 4 because James was aware of the sexual acts and thus was not unconscious. Not so.

"We review the entire record in the light most favorable to the judgment, to determine whether it contains evidence sufficient to permit any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 . . . .) We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence, but we do not reweigh the evidence or reevaluate the credibility of the witnesses. [Citation.]" (*People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1004 (*Hernandez*).)

"'[U]nconscious of the nature of the act' means incapable of resisting because the victim meets one of the following conditions: [¶] (1) Was unconscious or asleep. [¶] (2) Was not aware, knowing, perceiving, or cognizant that the act occurred. [¶] (3) Was not aware, knowing, perceiving, or cognizant of the essential characteristics

10

of the act due to the perpetrator's fraud in fact. [¶] (4) Was not aware, knowing, perceiving, or cognizant of the essential characteristics of the act due to the perpetrator's fraudulent representation that the oral copulation served a professional purpose when it served no professional purpose." (Former § 288a, subd. (f).) Unconscious of the act does not mean "a total unawareness that the physical act is being performed." (*People v. Howard* (1981) 117 Cal.App.3d 53, 55.) "*Substantively*, the provisions regarding the four major sex crimes parallel each other." (*People v. White* (2017) 2 Cal.5th 349, 357.)

*Hernandez, supra,* 200 Cal.App.4th 1000, is instructive. In that case, defendant challenged the sufficiency of the evidence to support his conviction for rape of an unconscious person. (*Id.* at p. 1002.) The *Hernandez* court concluded there was sufficient evidence to support defendant's conviction because the victim had passed out due to intoxication, did not speak to defendant, did not give him permission to have sex, and barely moved during their encounter. (*Id.* at p. 1005.)

Here, James testified he woke up to Hernandez masturbating him, not understanding what was happening, felt Hernandez's mouth on his penis, and he blacked out. James added he woke up to Hernandez's "backside . . . coming down on to [him]." The fact James had some awareness of the acts did not lessen his culpability because complete unawareness is not required. Additionally, Hernandez variously described James as passed out or asleep, admitted they did not speak, and said he was so intoxicated he would not remember what happened. Like in *Hernandez*, the jury could reasonably rely on this evidence to conclude James was unconscious or asleep when Hernandez orally copulated and sodomized him.

Hernandez's reliance on *People v. Lyu* (2012) 203 Cal.App.4th 1293, 1296, is misplaced because in that case the victim was fully awake and getting a massage when the masseuse sexually assaulted her. Therefore, sufficient evidence supports Hernandez's convictions for counts 2 and 4.

11

*III. Abstract of Judgment*

Hernandez argues the abstract of judgment must be corrected. The Attorney General agrees.

"An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize. [Citation.]" (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) A court may correct a clerical error in an abstract of judgment at any time. (*Ibid*.) Here, the abstract of judgment states Hernandez was convicted on count 2 of "lewd/lasc child < 14". This is incorrect. He was convicted of oral copulation with an unconscious person, and the abstract of judgment must be corrected.

## DISPOSITION

The judgment is affirmed. The clerk of the superior court is ordered to prepare a corrected abstract of judgment reflecting the above modification and to forward a copy of it to the Department of Corrections and Rehabilitation, Division of Adult Operations.

O'LEARY, P. J.

WE CONCUR:

SANCHEZ, J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12