Filed 5/13/26  P. v. Jimenez CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>HERIBERTO RAMIREZ JIMENEZ,<br><br>    Defendant and Appellant. | B333819<br><br>(Los Angeles County<br>Super. Ct. No. BA504202) |

      APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald Coen, Judge.  Judgment reversed and vacated in part; remanded with directions.

      Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

      Rob Bonta, Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Julie A. Harris, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

# INTRODUCTION

Heriberto Ramirez Jimenez[1] appeals his conviction after a jury trial for rape of an unconscious or asleep person.  Jimenez argues the trial court failed to instruct on a lesser included offense and that he received ineffective assistance of counsel with respect to alleged prosecutorial misconduct in closing argument.  Jimenez further requests review of the court's pretrial determination not to disclose certain evidence under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) and *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).  Finally, Jimenez contends the trial court erred by imposing an upper term sentence based on aggravating facts not found by the jury.  We affirm Jimenez's conviction, but we vacate his sentence and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Information*

In July 2022, Jimenez was charged with rape of an unconscious or asleep person.  (Pen. Code, § 261, subd. (a)(4)(A).)[2]  The information contained an allegation that Jimenez was previously convicted of a serious and/or violent felony within the meaning of sections 667, subdivision (d), and 1170.12,

---

[1]    The defendant's name intermittently appears in the record as Heriberto Jimenez Ramirez or Humberto Ramirez Jimenez.  We use his name as reflected in the case caption.

[2]    Undesignated statutory references are to the Penal Code.

subdivision (b).  The information alleged aggravating factors,[3] including that the offense involved great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness, and callousness (rule 4.421(a)(1)); the victim was particularly vulnerable (rule 4.421(a)(3)); Jimenez engaged in violent conduct in committing the offense that indicates a serious danger to society (rule 4.421(b)(1)); Jimenez suffered prior convictions or sustained juvenile delinquency petitions that are numerous and of increasing seriousness (rule 4.421(b)(2)); Jimenez served a prior prison term within the meaning of rule 4.421(b)(3); and Jimenez previously performed unsatisfactorily on probation or parole (rule 4.421(b)(5)).

Jimenez was tried by a jury in July 2023.

B.    *Trial Evidence*

M.B. testified at trial that on May 11, 2021, she was working when she had a fight with her boyfriend over the phone. M.B. was 24 years old at the time.  M.B. became "mad" and "very emotional" about the fight, and after she left work at 5 p.m., she went to the liquor store and bought two beers and two "stronger" malt beverages.  When she returned home at approximately 6 p.m., she went to her room, drank the two beers and one of the malt beverages, and became intoxicated.  M.B. "blacked out" from drinking and had "difficulty remembering what happened" next, but she remembered being in her room and looking at her phone around 10 p.m.

---

[3]    All undesignated rule references are to the California Rules of Court.

3

M.B.'s next memory was "laying down on the floor" on her back and "w[a]k[ing] up to someone on top of [her]." She saw "branches" above her and recognized that she was "at the park" next to her house, which she visited "at least weekly." M.B. described that when she "woke up," a man was "above" her, "face to face" with her, and "he had his penis inside of my vagina." The man "thrust[] back and forth for approximately two or three minutes." M.B. did not say anything to the man when she woke up, and he did not look at her or say anything to her. M.B. "froze" and did not take any action. When M.B. made eye contact with the man, he got up, and she pulled up her pants and ran in the direction of her house.

M.B. described the man as "about 30" years old, "bald," "Hispanic," and wearing a blue sweater and a backpack. She remembered that it was still "dark" when she ran home, and she remembered "struggling" with the gate to her house before getting inside, but she did not remember anything else from the night because she was "tired" and "still feeling the effects of the alcohol."

On cross-examination, M.B. testified that she did "not know how long [she] had been in th[e] park before [she] woke up," and she didn't know "where [she]'d been at all before [she] woke up" or "who [she] talked to . . . if anyone." Jimenez's counsel asked M.B., "You don't even know if you were asleep; right?" and M.B. answered, "I don't know."

4

The next morning, M.B. learned from her mother that she returned home at 2 a.m. M.B. was "trying to comprehend what had happened" the night before, "piece together what took place," and she had "doubts about [her] memory" because she had been intoxicated. She realized her phone was missing and, using software to locate her phone, she discovered it was still at the park. M.B. returned to the park and found her phone "under a shrub" and "buried in the dirt," recognizing it as the "same place" she woke up with the man on top of her the night before.

M.B. did not tell any family members about the sexual assault because she was embarrassed, but she texted a friend named Jessica T. about it on May 13. M.B. felt "very emotional" about what happened, including feeling "mad" and "sad." She told Jessica that she "didn't want to deal with this[,] . . . with the consequences of how [she was] going to feel in the future," and she "didn't want to be here anymore." M.B. felt that she "actually wanted to kill [her]self." Jessica met with M.B. "right away" and offered to take her to the hospital. Jessica testified at trial that M.B. told her she was sexually assaulted at the park after blacking out, and that M.B. was "sad and crying" and "distressed."

M.B. underwent a sexual assault examination at a local hospital. Marguerite Garrison, a registered nurse on the sexual assault response team, testified she conducted the examination. Garrison found "acute bruising on [M.B.'s] inner thighs" and observed no injuries in the genital area, which was "fairly common" and still "consistent" with a sexual assault. Garrison also collected internal and external swabs of M.B.'s genital area and mouth, as well as swabs of her hands and fingernails, belly button, neck, and breasts.

5

Officers from the Los Angeles Police Department (LAPD) responded to M.B.'s report of sexual assault and visited the park with M.B. M.B. directed the officers to the northwest portion of the park and showed them the area where the assault occurred and the route by which she ran away. Officers also recovered M.B.'s sexual assault examination kit from nurse Garrison and the clothing M.B. was wearing during the assault.

Ernest Park, a criminalist with the LAPD crime lab, testified that he processed M.B.'s sexual assault evidence kit in June and July 2021. Park detected "male DNA" from M.B.'s vaginal, anal, and neck swabs. M.B.'s vaginal swab contained "24 percent" M.B.'s DNA and "76 percent . . . unknown male" DNA. In August 2021, the LAPD forensic sciences division received "a DNA hit" from their DNA database for a potential suspect, "Jesus Ramirez Rivera." LAPD detectives located "Rivera" in North County Jail in Santa Clarita in March 2022 and learned his true name was Heriberto Ramirez Jimenez.

LAPD detectives interviewed Jimenez in March 2022. Jimenez told police that he was familiar with the park and that "he would ride [his bike] daily between the hours of 1:00 and 2:00 in the morning through that area" to get home, but he initially denied ever entering the park. Jimenez stated he did not know M.B. and he did not have sex with her in the park, but when pressed, Jimenez "changed his story," admitted he had walked through the park before, and said "that he had sexual intercourse with a female in the park two years ago," with someone named "Crystal" or "Naomi." Jimenez continued to deny that he knew or had sex with M.B.

Jimenez agreed to provide a DNA sample. Park compared the unknown male DNA from M.B.'s vaginal swab to Jimenez's DNA sample in April 2022. Park concluded the unknown male DNA from M.B.'s vaginal swab "belong[ed] to" Jimenez. Park explained that, statistically, the male DNA was "one septillion" (or "one with 24 zeros after it") times more likely to be Jimenez's DNA than the DNA of any other person.

Detectives also presented M.B. with a photographic lineup including Jimenez's photo, but she was unable to identify Jimenez. M.B. testified that she did not know Jimenez.

Jimenez did not testify at trial or present any evidence. In closing, Jimenez's attorney argued the prosecution had not proved that M.B. was unconscious, but merely that she "blacked out."

C. *Conviction and Sentence*

The jury convicted Jimenez of the rape of an unconscious or asleep person.

Finding certain aggravating facts and the prior strike allegation to be true, the court imposed an upper term sentence of eight years, doubled for the prior strike, for a total sentence of 16 years in prison. We discuss the court's sentencing decision in further detail below.

Jimenez timely appealed.

**DISCUSSION**

A.  *Failure To Instruct on Lesser Included Offense of Simple Battery*

  1.  *Governing Law and Standard of Review*

" ' [A] defendant has a constitutional right to have the jury determine every material issue presented by the evidence [and] . . . an erroneous failure to instruct on a lesser included offense constitutes a denial of that right.' " (*People v. Haley* (2004) 34 Cal.4th 283, 312.)  Accordingly, "a trial court must, sua sponte, or on its own initiative, instruct the jury on lesser included offenses 'when the evidence raises a question as to whether all the elements of the charged offense were present . . . .' " (*People v. Barton* (1995) 12 Cal.4th 186, 194–195.) "But this does not mean that the trial court must instruct sua sponte on the panoply of all possible lesser included offenses. Rather, . . . ' "such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury. [Citations.]  'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . .conclude[]" ' that the lesser offense, but not the greater, was committed." ' " (*People v. Huggins* (2006) 38 Cal.4th 175, 215.)

"Whether a trial court commits error by omitting an instruction on a lesser included offense depends not only on whether the evidence supports the possible commission of an alternative crime, but whether that alternative crime constitutes a 'lesser included offense[.]' " (*People v. Gonzalez* (2018) 5 Cal.5th 186, 197.)  A crime qualifies as a lesser included offense "if all the

8

elements of the lesser offense are *also* elements of the greater offense," or "if all of the elements of the lesser offense are also found in the *facts alleged* to support the greater offense in the accusatory pleading." (*Ibid.*)

As relevant here, " '[r]ape of an unconscious person . . . requires proof that (1) the defendant had sexual intercourse with the victim; (2) the defendant was not married to the victim at the time; (3) the victim was unable to resist because she was unconscious of the nature of the act; and (4) the defendant knew the victim was unable to resist because she was unconscious of the nature of the act.' " (*People v. Manning* (2014) 226 Cal.App.4th 1133, 1140; accord, *People v. Miranda* (2021) 62 Cal.App.5th 162, 173 (*Miranda*); *People v. Hernandez* (2011) 200 Cal.App.4th 1000, 1006 (*Hernandez*); see § 261, subd. (a)(4).) " '[U]nconscious of the nature of the act' means incapable of resisting because the victim . . . [w]as unconscious or asleep . . . [or] [w]as not aware, knowing, perceiving, or cognizant that the act occurred." (§ 261, subd. (a)(4)(A), (B).) "The elements of simple battery are (1) the defendant willfully and unlawfully touched a person and (2) the touching was done in a harmful or offensive manner." (*People v. Chenelle* (2016) 4 Cal.App.5th 1255, 1263; accord, *People v. Shockley* (2013) 58 Cal.4th 400, 404; see § 242.)

The courts of appeal are divided as to whether simple battery is a lesser included offense of rape of an unconscious person. (See *Miranda, supra,* 62 Cal.App.5th at p. 176 [holding that "battery is a lesser included offense of the crimes involving sexually touching an unconscious victim"]; *Hernandez, supra,* 200 Cal.App.4th at p. 1006 [determining that "battery is not a lesser included offense of rape of an unconscious person"].)

9

*Miranda* concluded: "[A] battery jury instruction should be given in a case where a defendant is charged with committing a sex act upon an unconscious victim when substantial evidence supports a finding that the defendant touched the victim in a way other than charged (e.g., in a different body area than that required for the sex crime, or when the victim is conscious)." (*Miranda*, at p. 176.)

We independently review whether the trial court improperly failed to instruct the jury on a lesser included offense. (*People v. Souza* (2012) 54 Cal.4th 90, 113; accord, *People v. Waidla* (2000) 22 Cal.4th 690, 733.)

2.     *Substantial Evidence Did Not Support a Jury Instruction on Battery as a Lesser Included Offense*

Citing *Miranda*, *supra*, 62 Cal.App.5th 162, Jimenez argues that the court should have instructed the jury on simple battery, because "there was substantial evidence to support the conclusion that appellant engaged in sexual intercourse with [M.B.] while she was conscious." Jimenez points to M.B.'s testimony that "she and appellant . . . had intercourse for two to three minutes while she was awake." Jimenez recognizes that M.B.'s testimony "suggested that she and appellant were already engaging in sexual intercourse before those two or three minutes of complete consciousness," but he contends that M.B. "acknowledg[ed] that, due to her spotty memory, she could not say whether or not she was asleep. . . . In other words, [M.B.] could have been conscious and aware that she was engaging in

10

sexual intercourse with appellant and simply not remember that."[4]

We conclude the trial court did not err by failing to instruct on simple battery. Even assuming without deciding that simple battery is a lesser included offense of rape of an unconscious person, there was no substantial evidence at Jimenez's trial to support a jury instruction on simple battery.

As stated, Jimenez relies on *Miranda, supra,* 62 Cal.App.5th 162. In *Miranda,* victim S.C. testified to three separate incidents of sexual assault by the defendant, leading the jury to convict the defendant of sexual penetration of an unconscious person (§ 289, subd. (d)), oral copulation of an unconscious person (§ 287, subd. (f)), and rape of an unconscious person (§ 261, subd. (a)(4)). (*Id.* at pp. 169–171.) The jury was not instructed on the lesser included offense of simple battery, and the Court of Appeal held this was error as to the oral copulation count only, because there was substantial evidence S.C. was not unconscious during this incident, supporting conviction on the lesser offense. (*Id.* at p. 177.) Specifically, "S.C.'s testimony regarding her state of consciousness could have led a reasonable jury to conclude that she was neither asleep,

---

[4]     The People initially argued that "[b]attery is not a lesser included offense of rape of an unconscious person." The People subsequently filed a letter brief stating that "respondent has subsequently reevaluated this point and come to a different conclusion on the matter" and its new position is "that battery is a lesser include offense of rape of an unconscious person. [¶] That being said, even if battery is a lesser included offense of rape of an unconscious person, the trial court in this case did not err because there was no substantial evidence that appellant committed only a battery."

unconscious, nor unaware of what was happening when [defendant] orally copulated her." (*Ibid.*)

*Miranda* held, however, that substantial evidence did not support a simple battery instruction on the rape and sexual penetration counts. (*Miranda*, *supra*, 62 Cal.App.5th at p. 178.) Regarding the sexual penetration count, S.C. testified that the defendant "touched her vagina while she was 'falling asleep,' " it " '[t]ook [her] a while to realize' " what was happening, and she was " 'awake kind of when [defendant] was touching [her], but [she] wasn't fully alert, like, what was actually happening to [her].' " (*Id.* at pp. 168–169.) As to the rape count, S.C. testified she " 'fell back asleep and then when [she] woke up again, [defendant] was, like, feeling inside of [her],' " meaning that "his penis" was "in [her] vagina." (*Id.* at p. 170.) "In describing this incident at trial, S.C. was asked, 'Now, that's when you woke up, when you felt his weight and his penis into your vagina; is that correct,' to which she replied, 'Yes.' " (*Id.* at pp. 170–171.) The Court of Appeal held, "There was no ambiguity in th[is] evidence . . . that would allow a reasonable jury to find that [defendant] committed only battery." (*Id.* at p. 178.)

In this case, as in *Miranda*, the victim's testimony is the only source of evidence about the sexual assault. Here, M.B. testified that she "blacked out" from drinking. M.B. described she then "woke up to someone on top of me," and "he had his penis inside of my vagina." Jimenez was "thrusting back and forth for approximately two or three minutes," until M.B. made eye contact with him and he got up. M.B. testified that, even as she ran back to her house, she was not "fully aware of what had just happened" because she was "tired" and "still feeling the effects of the alcohol at th[at] time." As with the rape charge in

12

*Miranda*, M.B.'s testimony was unambiguous that when she "woke up," Jimenez's penis was inside her vagina.  (See *Miranda*, *supra*, 62 Cal.App.5th at pp. 170–171, 178.)  In other words, at the time Jimenez began the assault, M.B. was " 'unconscious of the nature of the [sexual] act' " (§ 261, subd. (a)(4)), because she was "unconscious or asleep," or otherwise "not aware, knowing, perceiving, or cognizant that the act occurred" (*id.*, subds. (a)(4)(A), (B)).  Unlike the oral copulation charge in *Miranda*, there was no evidence here that M.B. was awake or otherwise conscious of the nature of the sexual act when the assault began. (*Miranda*, at p. 177.)  For these reasons, no substantial evidence supported an instruction on simple battery.

B.      *The Trial Court Did Not Err By Denying Jimenez's* Pitchess *Motion*

At Jimenez's request, we review whether the trial court erred by denying his motion pursuant to *Pitchess*, *supra*, 11 Cal.3d 531 for discovery of law enforcement personnel files.[5]

Before trial, the People notified Jimenez's counsel pursuant to *Brady*, *supra*, 373 U.S. 83, of potential exculpatory or impeachment evidence in the LAPD personnel file of Officer Evelyn Cabrera, one of the LAPD officers who interviewed Jimenez in county jail about M.B.'s assault.  Jimenez filed a

---

[5]      The People object to review as "idle," arguing in essence that the error is harmless because Jimenez only requested personnel files from a law enforcement officer who did not testify at trial, so he "could not have been prejudiced by any denial of information" regarding this officer.  Because we conclude after our review that there were no discoverable documents, we do not reach prejudice.

motion under *Pitchess* and *Brady*, specifically seeking "false statements of police reports and fabrication of probable cause." The People did not oppose Jimenez's request.

The trial court heard the motion in camera in March 2023 and denied Jimenez's request for disclosure, finding there were no responsive documents. The court caused to be prepared a sealed transcript of the *Pitchess* proceedings summarizing the documents it considered and its reasons for denying disclosure.

"[E]vidence contained in a law enforcement officer's personnel file may be relevant to an accused's criminal defense and . . . to withhold such relevant evidence from the defendant would violate the accused's due process right to a fair trial." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1227 (*Mooc*).) At the same time, "the officer in question has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily. Accordingly, both *Pitchess* and the statutory scheme codifying *Pitchess* require the intervention of a neutral trial judge, who examines the personnel records in camera, away from the eyes of either party, and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations." (*Ibid.*) To permit future appellate review, the trial judge should "make a record of what documents it examined before ruling on the *Pitchess* motion." (*Id.* at p. 1229.)

" ' "When a defendant shows good cause for the discovery of information in an officer's personnel records, the trial court must examine the records in camera to determine if any information should be disclosed. [Citation.] The court may not disclose . . . conclusions drawn during an investigation, or facts so remote or irrelevant that their disclosure would be of little benefit." ' "

14

(*People v. McDaniel* (2021) 12 Cal.5th 97, 134, superseded by statute as stated in *People v. Nuno* (2024) 105 Cal.App.5th 1030, 1052, fn. 12; see Evid. Code, § 1045, subd. (b)).)

The "procedural mechanism for criminal defense discovery" established by *Pitchess* "must be viewed against the larger background of the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence." (*Mooc*, *supra*, 26 Cal.4th at pp. 1225–1226 [citing *Brady*, *supra*, 373 U.S. at p. 87]; see *City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 7 [federal due process "requires the prosecution to disclose evidence that is favorable and 'material' to the defense"].) "Materiality under *Brady* 'is narrower than the *Pitchess* requirements.' [Citation.] . . . [U]nder *Brady*, 'evidence is "material" only if it is reasonably probable a prosecution's outcome would have been different had the evidence been disclosed.' " (*Schneider v. Superior Court* (2025) 111 Cal.App.5th 613, 629.) While the exceptions to *Pitchess* disclosure in Evidence Code section 1045 "do not apply to *Brady*[] motions, practically speaking, materials concerning remote events that would have little 'practical benefit' would not be *Brady* material either." (*Id.*, at p. 629, fn. 7.)

"[W]e review a superior court's decision on the discoverability of material in police personnel files under an abuse of discretion standard." (*Serrano v. Superior Court* (2017) 16 Cal.App.5th 759, 767.) After independent review of the sealed *Pitchess* proceedings, we conclude the trial court did not abuse its discretion by denying Jimenez's request for disclosure.

C.     *The Nondisclosure of a Prior Report of Sexual Assault By M.B. Did Not Violate* Brady *Because It Was Not Material*

Jimenez requests review of whether the prosecution's failure to disclose a prior sexual assault report by M.B. violated *Brady*, *supra*, 373 U.S. 83.[6]  On reply, Jimenez states he "is not raising a *Brady* claim per se" but "is asking this Court to independently review the report to ascertain whether it was discoverable and should have been turned over to the defense and whether or not [his] conviction should be reversed due to the fact that he did not have the benefit of the information contained therein at trial."  M.B.'s prior report was filed with this court under seal, and Jimenez has not sought to unseal it.[7]  We

---

[6]    In the trial court, Jimenez also sought the police report under section 1054.1.  Although his opening brief includes passing references to section 1054.1, Jimenez advances no substantive argument under this statutory provision on appeal.

[7]    The People assert that Jimenez's *Brady* claim is forfeited "because defense counsel failed to object on that basis at trial."  But "[t]he prosecution has a sua sponte duty to provide *Brady* information," and "[f]ailure to object is not relevant to a *Brady* analysis." (*People v. Harrison* (2017) 16 Cal.App.5th 704, 710; accord, *Verdugo*, *supra*, 50 Cal.4th at p. 279 [" 'Pursuant to *Brady* . . . the prosecution must disclose material exculpatory evidence whether the defendant makes a specific request [citation], a general request, or none at all' "].)  The People further argue that review would be "idle" because "the admission of [the prior rape report] would not have changed the outcome of the trial."  As discussed below, the People's argument relates to whether evidence is material or prejudicial under *Brady*, not whether a *Brady* claim is reviewable.

16

conclude the report was discoverable, but there was no *Brady* error because the report was not material.

### 1.    *Relevant Procedural History*

On April 10, 2023, at a pretrial hearing, Jimenez's counsel raised a discovery issue with the court regarding "a prior sexual assault report made by the same victim in an unrelated case a year before this incident." Counsel stated he became aware of the prior report "before the prelim about a month and a half ago," and he requested "details of that incident that may be relevant to this case."

The People objected to disclosure of the report, arguing Jimenez had not pursued the procedures in Evidence Code section 1103 to admit evidence of a complaining witness's prior sexual conduct. The People further argued that the potential "relevance [of the report] is solely based upon the credibility of the victim," but they did not "believe that the prior incident goes to the victim's credibility."

The court stated that because defense "counsel was aware of this information sometime ago" and had not followed the procedures in Evidence Code section 1103 to request the prior report, "there is not a discovery violation on behalf of the People." Jimenez further objected, arguing he "inquired whether the earlier report by the same victim involved alcohol. This case involves an intoxicated person. The earlier incident involved alcohol abuse by the victim. In this case she could have a sexual relationship with someone she doesn't know and claim later it is sexual assault [*sic*]." The court stated there was no discovery violation because "both Evidence Code 1103 and Evidence Code section 782 ha[ve] a number of procedural steps to be followed in

17

order for that information to be discoverable," but "[t]hose procedures have not been followed." The court continued the trial to permit Jimenez to file a discovery motion.

On May 4, 2023, Jimenez filed a motion to compel discovery of M.B.'s prior sexual assault report. Counsel included a declaration that in his "conversation[] with [the prosecutor] concerning the details of the prior incident, [the prosecutor] has related that alcohol use or abuse may have played a role in the victim's prior sexual assault and that M[.]B.'s complaint resulted in no charges being filed by [the prosecutor's] office." The motion requested discovery of the report pursuant to "Penal Code § 1054.1, the due process clauses of the state and federal constitutions, and the defendant's right to the effective assistance of counsel." The motion argued, "While it is difficult[] to ascertain the relevancy of the prior incident without knowing specifically what occurred, the fact that the prior incident potentially involves a situation similar to the one in this case raises issues which the defense should be allowed to explore: does the complaining witness display a pattern of drinking excessively, having sexual intercourse, and then later claim sexual assault or rape[?] Does the complaining witness have a pattern of voluntarily drinking and then claim she has no memory of a sexual encounter?"

The trial court denied Jimenez's motion at a hearing on May 24, 2023. At the hearing, the prosecutor argued the court had already reviewed the report in camera at the April 10 hearing and stated it was not discoverable. The court did not remember reviewing the report until it consulted its notes. Based on this prior review, the court determined that "the

18

information sought by defense counsel is not relevant to the charges against Mr. Jimenez."

Before trial, the prosecution moved in limine to exclude M.B.'s prior sexual conduct under Evidence Code sections 1103 and 782. At a hearing on this motion, Jimenez again requested discovery of M.B.'s prior sexual assault report, arguing he could not effectively oppose the prosecutor's motion in limine without knowing the circumstances surrounding the prior report. The court granted the prosecution's motion and denied Jimenez's request as a "fishing expedition."

2. *Governing Law and Standard of Review*

In *Brady*, *supra*, 373 U.S. 83, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Id.* at p. 87.) " ' "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." [Citation.] Prejudice, in this context, focuses on "the materiality of the evidence to the issue of guilt and innocence." ' " (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 176.)

"Evidence is 'favorable' if it either helps the defendant or hurts the prosecution, as by impeaching one of its witnesses." (*In re Sassounian* (1995) 9 Cal.4th 535, 544 (*Sassounian*); accord, *People v. Williams* (2013) 58 Cal.4th 197, 256.) " 'In general, impeachment evidence has been found to be material where the

19

witness at issue "supplied the only evidence linking the defendant(s) to the crime," [citations], or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case, [citations].  In contrast, a new trial is generally not required when the testimony of the witness is "corroborated by other testimony[.]" ' " (*People v. Salazar* (2005) 35 Cal.4th 1031, 1050 (*Salazar*).)

"Favorable evidence is material when ' "it could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." ' [Citations.]  Put another way, the question is whether, deprived of the information withheld by the prosecution, the defendant received 'a trial resulting in a verdict worthy of confidence.' " (*In re Bacigalupo* (2012) 55 Cal.4th 312, 333; see *Salazar*, *supra*, 35 Cal.4th at p. 1043 [to prevail on *Brady* claim, a defendant " 'must show a "reasonable probability of a different result" ' " at trial].)  We assess the materiality of the evidence "by considering the evidence in question under the totality of the relevant circumstances and not in isolation or in the abstract." (*Sassounian*, *supra*, 9 Cal.4th at p. 544; see *Salazar*, at p. 1052, fn. 8 [" 'the determination of materiality for *Brady* purposes is necessarily fact specific' "].)  "[T]he duty to disclose [favorable and material] evidence exists even though there has been no request by the accused." (*Salazar*, at p. 1042.)

"[S]ince evidence is not material for *Brady* purposes unless it is reasonably probable that the evidence would have changed the outcome [citation], *Brady* violations are, by definition, prejudicial." (*People v. Gutierrez* (2013) 214 Cal.App.4th 343, 356; see also *Sassounian*, *supra*, 9 Cal.4th at p. 545, fn. 7 [for *Brady* claims, "harmless-error analysis under *Chapman v.*

*California* (1967) 386 U.S. 18 . . . . is not implicated" because *Brady* error "is necessarily 'prejudicial' "]; accord, *Kyles v. Whitley* (1995) 514 U.S. 419, 435–436.)

We independently review a *Brady* claim. (*Salazar*, *supra*, 35 Cal.4th at p. 1042.)

### 3. *There Was No* Brady *Error Because the Report Was Not Material*

Jimenez "asks this Court to independently review [the report] to determine whether or not it fell within the scope of Penal Code section 1054.1 and *Brady v. Maryland* and thus whether or not the trial court erred in denying appellant's motion to compel discovery."[8] But Jimenez does not advance any substantive argument under section 1054.1 or that he was prejudiced under *People v. Watson* (1956) 46 Cal.2d 818 due to an evidentiary error. (See *People v. Verdugo* (2010) 50 Cal.4th 263, 280 [applying *Watson* harmless error standard for violation of section 1054.1].) Instead, he argues any error was prejudicial per se under *Brady*. (See *In re Brown* (1998) 17 Cal.4th 873, 887 [" 'once a reviewing court applying [*Brady*] has found constitutional error there is no need for further harmless-error review.' . . . The one subsumes the other"].) Accordingly, we focus our review on whether the trial court erred under *Brady*. (See *People v. Deleoz* (2022) 80 Cal.App.5th 642, 662–663 (*Deleoz*) ["even assuming (without deciding) that the trial court erred under section 1054.1 . . . in not ordering the prosecution to

---

8 The court also denied Jimenez's discovery motion based on its prior in-camera review of the report, which occurred before the motion was filed. Jimenez, however, does not contend this was error.

disclose [certain evidence]," there was no *Brady* violation and "therefore . . . no reversible error, under the harmless error standard set forth in [*Watson*]"].)[9]

Jimenez argues that M.B.'s prior report would be relevant to M.B.'s credibility if the report was false. Jimenez also argues "it is difficult, if not impossible for appellant to substantively argue that evidence of [M.B.]'s prior allegation of rape was admissible under Evidence Code sections 782 and 1103 without knowing the details surrounding the allegation." But " '[p]arties who challenge on appeal trial court orders withholding information as privileged or otherwise nondiscoverable "must do the best they can with the information they have, and the appellate court will fill the gap by objectively reviewing the whole record." ' " (*People v. Hin* (2025) 17 Cal.5th 401, 428.) In all events, Jimenez contends the report could be material under *Brady* "considering the centrality [M.B.]'s credibility as a witness played in the outcome of [his] trial and the potential impact a prior false allegation involving the exact same crime as the one charged here could have had on her credibility."

Jimenez concedes M.B.'s prior report would be relevant to M.B.'s credibility only if her prior allegations were "proven to be false." (*People v. Miranda* (2011) 199 Cal.App.4th 1403, 1424

---

[9]    Here, the trial court appeared to conflate discoverability of M.B.'s prior report with admissibility of the report under Evidence Code sections 782 and 1103. Even if evidence " 'may not turn out to be admissible at trial, discovery is not limited to admissible evidence, but encompasses information which may lead to relevant evidence.' " (*Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25, 32.) As stated, however, Jimenez limits his claim of error to *Brady*.

["Prior rape complaints do not reflect on credibility unless proven to be false"]; see *People v. Tidwell* (2008) 163 Cal.App.4th 1447, 1458 ["While a prior false complaint establishes an instance of dishonesty on the very issue hotly disputed in this case, that is, whether [the victim] consented to the sexual acts, a prior complaint not proven to be false has no such bearing"].)  After our review of the record in this case, we are not aware of any evidence that M.B.'s prior report was determined to be false.  And to the extent M.B.'s prior report was relevant to a "pattern" of "alcohol abuse by the victim," as Jimenez's counsel asserted in the trial court, M.B.'s intoxication during the assault in this case was undisputed and she was cross-examined on this issue at trial.

After our review of the sealed report, we conclude there was no *Brady* violation.  Even assuming M.B.'s prior report was favorable to Jimenez as he posits, and further assuming the report was suppressed by the prosecution, the sealed report was not material under *Brady* because there is no reasonable probability of a different trial outcome had the report been disclosed, particularly "considering the collective evidence presented at trial."  (*People v. Deleoz*, *supra*, 80 Cal.App.5th at p. 666; see also *Salazar*, *supra*, 35 Cal.4th at p. 1050.)

D.    *Ineffective Assistance of Counsel*

Jimenez argues his counsel failed to object to prosecutorial misconduct during closing arguments, namely, an assertion the prosecutor made about the reasonable doubt standard.  Jimenez concedes that because he did not object in the trial court, he forfeited the prosecutorial misconduct issue and must establish error through the ineffective assistance of his counsel.

23

1.     *Relevant Procedural History*

The prosecutor argued in the People's closing argument that "the real issue in this case is whether or not you, as a juror, can believe what [M.B.] had to say, meaning did she come up here, testify during trial, and tell you the truth?" The prosecutor submitted that M.B.'s testimony was "credible" and "consistent" and that her testimony alone was sufficient to convict Jimenez. But the prosecutor also asserted M.B.'s testimony was corroborated by her reports to the police, to her friend Jessica, and the sexual assault examiner, as well as the findings of the sexual assault exam and the DNA testing. The prosecutor continued:

> "I believe [the defense] is going to come up here and say, 'Look, [M.B.] was drunk. She has no idea what she's talking about.' There are gaps in her memory, and because there are gaps in her memory, that, ladies and gentlemen, is reasonable doubt. . . . But as [the defense] provides his closing argument, understand this: Gaps in the victim's memory does [*sic*] not equal reasonable doubt. That is not the law."

Jimenez's counsel did not object to this argument. Defense counsel did object to other arguments made by the prosecutor on the grounds of improper argument and "reced[ing] the burden" of proof. In his closing, Jimenez argued that the prosecution had not proved that M.B. was "unconscious" because "[t]here is a difference between blacking out and being unconscious." He further argued, "[D]o you believe the story of someone who is

24

unconscious?  She doesn't remember what happened at all, right?"

The jury was subsequently instructed on the reasonable doubt standard and the standards for "determining [] believability of a witness."

2.    *Governing Law and Standard of Review*

"Advocates are given significant leeway in discussing the legal and factual merits of a case during argument.  [Citation.] However, 'it is improper for the prosecutor to misstate the law generally [citation], and particularly to attempt to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].'  [Citations.]  To establish such error, bad faith on the prosecutor's part is not required.  [Citation.] '[T]he term prosecutorial "misconduct" is somewhat of a misnomer to the extent that it suggests a prosecutor must act with a culpable state of mind.  A more apt description of the transgression is prosecutorial error.' " (*People v. Centeno* (2014) 60 Cal.4th 659, 666–667.)

" 'A defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion, and on the same ground, the defendant objected to the action and also requested that the jury be admonished to disregard the perceived impropriety.' [Citation.]  A defendant whose counsel did not object at trial to alleged prosecutorial misconduct can argue on appeal that counsel's inaction violated the defendant's constitutional right to the effective assistance of counsel.  The appellate record, however, rarely shows that the failure to object was the result of counsel's incompetence; generally, such claims are more appropriately litigated on habeas corpus, which allows for an

25

evidentiary hearing where the reasons for defense counsel's actions or omissions can be explored." (*People v. Lopez* (2008) 42 Cal.4th 960, 966; see *People v. Mai* (2013) 57 Cal.4th 986, 1009 ["It is particularly difficult to prevail on an *appellate* claim of ineffective assistance" by trial counsel].)

"In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it 'fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms.' [Citations.] Unless a defendant establishes the contrary, we shall presume that 'counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy.' [Citation.] If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 745-746.)

3.      *On This Record, Jimenez Does Not Establish Ineffective Assistance of Counsel*

Jimenez argues the prosecutor's closing argument "was a misstatement of the reasonable doubt standard in that it

26

removed factual determinations regarding how much weight to give a witness's testimony from the jurors' consideration and told them that these determinations could not be used to establish reasonable doubt." Jimenez further contends that there was "no conceivable reason" for his counsel "not to object to the prosecutor's comment and, most importantly, ask the court for an admonition," especially "[c]onsidering that trial defense counsel's entire defense was to argue that reasonable doubt had been established by virtue of [M.B.]'s inability to remember the incident." Jimenez acknowledges that his defense counsel properly characterized the reasonable doubt standard with respect to M.B.'s testimony in the defense closing argument and that the prosecutor properly argued on rebuttal that "the gaps in [M.B.]'s memory were unimportant when compared to the rest of the evidence."

Jimenez does not establish ineffective assistance on this record. As an initial matter, the prosecutor's comment that "Gaps in the victim's memory does [*sic*] not equal reasonable doubt" was brief and ambiguous. For instance, the prosecutor did not outright state that "Gaps in the victim's memory *never* equal reasonable doubt," and it is possible the prosecutor intended to convey to the jury that "Gaps in the victim's memory do not *always* equal reasonable doubt." As stated, Jimenez concedes that the defense's closing argument and the rebuttal argument correctly characterized the burden of proof with respect to M.B.'s testimony. (See *People v. Young* (2005) 34 Cal.4th 1149, 1190 [prosecutor's misstatement in closing argument "was fleeting and therefore harmless"]; *People v. Kipp* (2001) 26 Cal.4th 1100, 1130 [same, where "prosecutor's comment was brief" and "not repeated"].) Further, Jimenez does not dispute that the trial

court subsequently correctly instructed the jury on the reasonable doubt standard and on the considerations regarding the believability of witnesses.  (See *People v. McDowell* (2012) 54 Cal.4th 395, 438 [jury instructions "rendered any conceivable [prosecutorial] misconduct harmless" because "[a]rguments by counsel 'generally carry less weight with a jury than do instructions from the court' "]; *People v. Lucas* (1995) 12 Cal.4th 415, 494 ["The failure to object was not ineffective assistance of counsel, as no prejudicial prosecutorial misconduct occurred"].)

Even assuming the prosecutor's argument rose to the level of prejudicial prosecutorial misconduct, the record does not reveal Jimenez's counsel's reasons for forgoing an objection, compelling us to reject the claim of ineffective assistance.  " '[C]ompetent counsel may often choose to forgo even a valid objection.  "[I]n the heat of a trial, defense counsel is best able to determine proper tactics in the light of the jury's apparent reaction to the proceedings.  The choice of when to object is inherently a matter of trial tactics not ordinarily reviewable on appeal." ' "  (*People v. Farnam* (2002) 28 Cal.4th 107, 202; accord, *People v. Carrasco* (2014) 59 Cal.4th 924, 985.)

Under the circumstances presented, Jimenez's counsel may have determined it was not tactically sound to object to an ambiguous prosecutorial comment.  (See *People v. Aguirre* (2025) 18 Cal.5th 629, 707 ["there may be valid reasons why counsel may choose not to make even a meritorious objection," including " 'the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality[;]' " "the interest in not drawing additional attention to, or inviting elaboration on, comments made by opposing counsel;" or that "some objectionable statements by an opponent may tee up points that counsel would

like to make in rebuttal better than an unobjectionable argument would"].) Indeed, that counsel objected to other arguments by the prosecutor regarding the burden of proof might suggest counsel had a tactical reason for withholding an objection to the challenged remark. For these reasons, Jimenez does not establish ineffective assistance on this record.

E.      *Sixth Amendment Sentencing Error*

Jimenez contends that the trial court erred by imposing an upper term sentence based on aggravating factors that were not found true by the jury beyond a reasonable doubt.

1.      *Additional Procedural History*

Before the jury rendered its verdict, Jimenez waived his right to a jury trial on the allegation of a prior strike conviction, but he declined to waive a jury trial on the rule 4.421 aggravating factor allegations. Nevertheless, the trial court stated it would conduct a court trial on the aggravating factor allegations relating to Jimenez's prior convictions increasing in seriousness and his prior prison term because it believed these aggravating factors were not subject to the jury's consideration.[10] No aggravating factors were submitted to the jury.

At sentencing, the court tried the two aggravating factors concerning Jimenez's prior convictions and prior prison term. The probation report addressed Jimenez's criminal history, including convictions for: misdemeanor driving under the

---

[10]     At that time, the court also discussed an aggravating factor relating to Jimenez's prior unsatisfactory performance on probation (rule 4.421(b)(5)), but this factor was not tried, and the court did not rely on it to impose the upper term sentence.

influence in 2006 and 2009 (Veh. Code § 23152, subd. (b)); misdemeanor spousal battery in 2016 (§ 242, subd. (e)(1)); felony criminal threats in 2017 (§ 422a); misdemeanor violation of a protective order in 2018 (§ 166, subd. (c)(1)); and two separate misdemeanor convictions for possession of a controlled substance in 2020 (Health & Saf. Code, § 11377). The People also introduced a section 969b report certifying Jimenez's felony criminal threats conviction for purposes of the prior strike and reflecting that Jimenez was sentenced to two years in prison for that offense.

The court found true the aggravating factors that Jimenez had prior convictions that are "numerous and [of] increasing seriousness" (rule 4.421(b)(2)) and that he had served a prior term in prison (rule 4.421(b)(3)). The court also found the prior strike allegation true. On this basis, the court imposed an upper term sentence, resulting in a total sentence of 16 years because "the aggravating factors outweigh the mitigating factors."

2.     *Governing Law and Standard of Review*

The Sixth Amendment guarantees the right to a jury trial on "any fact that exposes a defendant to a greater potential sentence." (*Cunningham v. California* (2007) 549 U.S. 270, 281; see *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) Under California's triad sentencing scheme, a trial court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term . . . ." (§ 1170, subd. (b)(2).) Accordingly, the Sixth Amendment right to a jury trial extends to any aggravating facts justifying an upper term sentence under section 1170,

30

subdivision (b)(2).  (*People v. Lynch* (2024) 16 Cal.5th 730, 760 (*Lynch*).)  If a "trial court relies on unproven aggravating facts to impose an upper term sentence," and the defendant has not waived his right to a jury trial or stipulated to the aggravating facts, this is constitutional error.  (*Id.* at p. 768.)  Our review is de novo.  (*In re Taylor* (2015) 60 Cal.4th 1019, 1035; *People v. Frazier* (2020) 55 Cal.App.5th 858, 864.)

If constitutional error occurred, we assess prejudice under *Chapman v. California* (1967) 386 U.S. 18, which requires us to find prejudice unless we "can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence." (*Lynch, supra,* 16 Cal.5th at p. 768.)  "This prejudice inquiry does not allow us to uphold the trial court's imposition of an upper term sentence based on some subset of aggravating facts."  (*Id.* at p. 761; see *id.* at p. 768 ["a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established"].)

In *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*), our Supreme Court held a defendant is constitutionally entitled to a jury finding as to the " 'increasing seriousness' of a defendant's prior convictions" under rule 4.421(b)(2).  (*Id.* at p. 1082.)  This is because "the inquiry requires a comparison and evaluation of the relationship among a defendant's prior convictions, and a determination as to their relative seriousness," i.e., "something more than a narrow factual finding that the convictions were sustained and what elements were required to prove them." (*Ibid.*)

31

*Wiley* concluded that the absence of a jury finding on the rule 4.421(b)(2) aggravating factor was prejudicial, even though "the progression of [the defendant's] offenses over time from misdemeanors to felonies" arguably showed a "trend from less serious offenses towards more serious ones." (*Wiley*, *supra*, 17 Cal.5th at p. 1089.) The court noted that "none" of the defendant's felony offenses were "strikingly more serious than the others, either by reference to the nature of the offense or the punishment," and that the defendant's conviction with the longest sentence exposure was followed by two less serious convictions. (*Ibid.*) The court further observed that the "increasing seriousness" of a defendant's convictions was "a comparative and qualitative" determination, making it " ' " 'difficult for a reviewing court to conclude that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court.' " ' " (*Id.* at p. 1090.) For these reasons, *Wiley* held that "[a] jury considering this criminal history could have disagreed as to whether it demonstrated criminal conduct of increasing seriousness." (*Id.* at p. 1089.)

3.     *The Court Prejudicially Erred By Imposing an Upper Term Sentence Without Jury Findings on the Aggravating Factors*

Here, the People concede, and we agree that the trial court erred by finding the aggravating factors true and imposing an upper term sentence without a jury finding on these factors, Jimenez's waiver of a jury trial, or his stipulation to the aggravating factors. (See *Wiley*, *supra*, 17 Cal.5th at p. 1082.) But the People argue the error was harmless because the jury

would have found both aggravating factors true.  As to the rule 4.421(b)(2) factor regarding the increasing seriousness of Jimenez's prior convictions, the People argue "appellant's crimes have plainly increased in seriousness since 2006" and "culminated in the instant offense of felony rape."  As to the rule 4.421(b)(3) prior prison term factor, the People contend "the section 969b packet . . . provided details about [Jimenez's] prior prison term such that [the] jury would have [fou]nd [this factor] true."

As in *Wiley*, we cannot conclude beyond a reasonable doubt that the jury would have found the rule 4.421(b)(2) factor true. Although Jimenez's offenses may "clear[ly] trend from less serious offenses towards more serious ones" (*Wiley*, *supra*, 17 Cal.5th at p. 1089), Jimenez's only prior felony conviction (criminal threats in 2017) was followed by several misdemeanor convictions relating to drug use or the violation of a protective order.  (See *id.* at p. 1089 [noting "a rational juror could have either placed greater emphasis on [defendant's] felony offenses, or on his more recent criminal history," where the defendant's "conviction with the longest sentence exposure" was followed by two convictions, including one misdemeanor, with lesser sentence exposure].)  For this reason, and because the rule 4.421(b)(2) factor involves a "comparative and qualitative" determination, we conclude Jimenez was prejudiced by the court's factfinding on the rule 4.421(b)(2) factor.  (*Id.* at p. 1090.)

Consulting a certified record of Jimenez's 2017 felony conviction, the trial court also found that Jimenez had served a prior prison term within the meaning of rule 4.421(b)(3), and it also relied on this factor to impose an upper term sentence.  But even assuming that the jury would have found this second

33

aggravating factor true, Jimenez is still entitled to remand for resentencing because "the omission of a jury trial was [not] harmless beyond a reasonable doubt as to *every* aggravating fact the trial court used to justify an upper term sentence," specifically the rule 4.421(b)(2) factor. (*Lynch, supra,* 16 Cal.5th at p. 775.)

## DISPOSITION

The judgment of conviction is affirmed. We reverse and vacate Jimenez's sentence to allow the People an opportunity to retry the aggravating factors and for resentencing in accordance with amended section 1170, subdivision (b), and any other applicable ameliorative legislation.

MARTINEZ, P. J.

We concur:

FEUER, J.                    STONE, J.